## UNITED STATES DISTRICT COURT DISTRICT
## OF THE DISTRICT OF COLUMBIA

MICHAEL ROWE
2106 Flagler Place NW
Washington, DC 20001

          Plaintiff,

   v.

PChange Protective Services LLC
8181 Professional Place, Suite 150
Hyattsville, MD 20785

and

Vesta Corporation
175 Powder Forest Drive
Weatogue, Connecticut, 06089

and

BRYAN HUNTER
7105 Valley Park Road, Apt. 201
Capitol Heights, MD 20743

and

JAMES PARKER
712 Amer Dr.
Fort Washington, MD 20744

and

DAMION PHILSON
3509 29th Pl.
Temple Hills, MD 20748

and

STEFAN WILLIAMS
8253 Parham Court
Severn, MD 21133

and

JOHN DOE 1, JOHN DOE 2, JOHN DOE 3
Identities and addresses unknown[1]

         Defendants.

Civil Action No.: 1:22-cv-03098

JURY TRIAL DEMANDED

---

[1] The exact identities of these three Defendant JOHN DOES are unknown. Concurrent with the filing of this Complaint, Mr. Rowe is moving this Court to allow him to conduct limited expedited discovery of Defendants PChange Protective Services LLC and Vesta Corporation and of the Metropolitan Police Department of the District of Columbia to obtain their identities.

## COMPLAINT

Michael Rowe, Plaintiff, by and through counsel, brings this action against Defendants Bryan Hunter, James Parker, Damion Philson, Stefan Williams, John Doe 1, John Doe 2, and John Doe 3 ("Individual SPO Defendants"), and against PChange Protective Services LLC ("PChange") and Vesta Corporation ("Vesta"), (collectively "Defendants") for unlawfully stopping, searching, and arresting Mr. Rowe through means of excessive force and without justification in violation of his constitutional rights and District of Columbia ("DC") law.  In support of the Complaint, Mr. Rowe alleges the following:

## INTRODUCTION

On the afternoon of October 26, 2021, Mr. Rowe dropped off his mother and sister at an entrance to the Park Southern apartment complex in Washington, DC, where his mother and sister live.  Mr. Rowe's three children, then aged 1, 5, and 8, were also in the car.  When Mr. Rowe attempted to drive out of the parking garage with his children still in the car, he found it blocked by a group of Special Police Officers ("SPOs") who were, and upon information and belief still are, employed by PChange and appointed to patrol the Park Southern property.  The SPOs continued to block the exit despite being aware that Mr. Rowe was attempting to exit the property. Eventually, the SPOs moved just enough for Mr. Rowe to get around them and he proceeded to drive toward the garage exit.  Frustrated, Mr. Rowe told the SPOs what he thought about their behavior.  In response, Defendant Hunter, one of the SPOs, walked toward the driver's side door of the car and asked Mr. Rowe for his identification.  Mr. Rowe pulled over, but refused to provide his identification, asserting that he did not have to provide this and that the SPOs should call the police if there was an issue.  At this point, several other SPOs approached the back of the car. Defendant Hunter continued to demand Mr. Rowe's identification and instructed Mr. Rowe to get out of the car, moving his hand over his firearm in a threatening manner and requesting pepper

spray from another SPO.  Defendants Hunter, Williams, and another Individual SPO Defendant then attempted to drag Mr. Rowe from the car by force, choking and assaulting Mr. Rowe in the process, all while his children watched from the back seat.  Mr. Rowe, afraid for his life and the lives of his children, stepped out of the car.

Once out of the car, Defendants Hunter and Williams handcuffed Mr. Rowe behind his back.  After Mr. Rowe was handcuffed, Defendant Williams retrieved pepper spray and sprayed it directly in Mr. Rowe's face.  Defendants Hunter and Williams took Mr. Rowe to the back of the car and attempted to search his pockets.  Mr. Rowe stated that he did not consent to a search and moved his legs to prevent the search.  Defendants Hunter and Williams threw Mr. Rowe against a wooden fence nearby and again attempted to search him.  After Mr. Rowe continued not to consent and move his legs, Defendants Hunter, Williams, and two other Individual SPO Defendants slammed Mr. Rowe's body onto the ground.  Defendant Hunter then threatened and intimidated Mr. Rowe as the SPOs waited for officers from the Metropolitan Police Department ("MPD") to arrive.

The Individual SPO Defendants lacked the legal authority to stop and arrest Mr. Rowe. Further, the Individual SPO Defendants' use of force against Mr. Rowe was excessive and unreasonable, constituting a callous indifference and reckless disregard for Mr. Rowe's well-established rights under the Constitution and District of Columbia law.  This action seeks monetary damages and injunctive relief to compensate Mr. Rowe for harm caused by these violations and to ensure that the SPOs at Park Southern, their employer PChange, and the management company that also oversees the activities of the SPOs at Park Southern, Vesta, act within the limits of their authority and the law.

## JURISDICTION AND VENUE

1.      This court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims arise under the United States Constitution and federal statutes.

2.      This court has supplemental jurisdiction over Mr. Rowe's related claims asserted under the laws of the District of Columbia pursuant to 28 U.S.C. § 1367.

3.      Venue is proper in this court pursuant to 28 U.S.C. § 1391(b)(2) because this is where the Defendants are employed or registered to operate and because the events giving rise to the claims occurred in the District of Columbia.

## PARTIES

4.      Plaintiff Michael Rowe, now and at all times relevant to this complaint, is a resident of the District of Columbia.

5.      Defendant PChange Protective Services LLC ("PChange") is a Maryland entity with its principal office located at 8181 Professional Place, Suite 150, Hyattsville, MD, 20785. Defendant PChange employs SPOs and contracts with private businesses to provide security services.  At the time of the incident at issue here, PChange employed the Individual SPO Defendants.

6.      Defendant Vesta Corporation ("Vesta") is a Connecticut entity with its principal office located at 175 Powder Forest Drive, Weatogue, CT, 06089.  Vesta manages the apartment complex at 800 Southern Avenue, SE, Washington, DC 20032, also known as Park Southern ("Park Southern").  At the time of the incident at issue here, Vesta contracted PChange to provide security services at Park Southern.

7.      Upon information and belief, Defendant Bryan Hunter is now and at all times relevant to this complaint has been an SPO and an employee of PChange.

4

8.      Defendant James Parker is now and at all times relevant to this complaint has been an SPO and an employee of PChange.

9.      Defendant Damion Philson is now and at all times relevant to this complaint has been an SPO and an employee of PChange.

10.     Defendant Stefan Williams is now and at all times relevant to this complaint has been an SPO and an employee of PChange.

11.     Defendant John Doe 1 is now and at all times relevant to this complaint has been an SPO and an employee of PChange.

12.     Defendant John Doe 2 is now and at all times relevant to this complaint has been an SPO and an employee of PChange.

13.     Defendant John Doe 3 is now and at all times relevant to this complaint has been an SPO and an employee of PChange.

## BACKGROUND ON SPECIAL POLICE OFFICERS IN THE DISTRICT OF COLUMBIA

14.     SPOs are empowered by the District of Columbia, under D.C. Code § 23-582(a), with "the same powers as a law enforcement officer to arrest without warrant for offenses committed within premises to which his jurisdiction extends."

15.     SPOs are appointed by the Mayor, under D.C. Code § 5-129.02(a), to patrol a property of a corporation or individual.

16.     Applications for the appointment of SPOs, under D.C. Municipal Regulation ("DCMR") 6-A1105.1, are made jointly in the names of the prospective SPOs and the names of the persons or corporations in connection with whose property of business the appointment is sought.

17.     Although appointed by the Mayor, under D.C. Code § 5-129.02(a), SPOs are to be paid wholly by the corporation or person on whose account their appointments are made.

18.     The agencies and employers that employ SPOs have an affirmative duty, under DCMR 6-A1106.2, to supervise special police officers in their employ.

19.     Organizations that employ SPOs may receive a registration certificate for firearms under D.C. Code § 7-2502.01.

20.     The Individual SPO Defendants were, at all times relevant to the Complaint, SPOs employed by Defendant PChange and appointed to patrol the Park Southern apartment complex.

21.     Vesta, now and at all times relevant to the Complaint, manages the Park Southern apartment complex.

22.     On information and belief, Defendant Vesta contracts with Defendant PChange to provide SPOs to patrol the Park Southern property, including the Individual Defendant SPOs.

23.     On information and belief, Vesta property management staff at the Park Southern property actively direct the PChange SPOs assigned to the Park Southern property, including by directing them to certain locations on the property and directing them to address various security issues and incidents.

24.     On information and belief, Vesta property management staff direct the SPOs to identify and investigate potential lease infractions, report infractions to the Vesta property management staff, and deliver lease infraction notices to residents in the building.

25.     On information and belief, lease infractions can result in eviction.

26.     On information and belief, Vesta property management staff at Park Southern direct the PChange SPOs to identify and report individuals they believe should be barred from the property.  The PChange SPOs patrol the property and inform such individuals when they are barred.

## **FACTUAL ALLEGATIONS**

27.     On the afternoon of Tuesday, October 26, 2021, Mr. Rowe drove his mother, sister, and three children to the Park Southern apartments, where Mr. Rowe's mother and sister live.  Mr. Rowe frequently visits Park Southern, because he helps his mother and sister with errands, relies on his mother and sister to assist in caring for his children, and frequently borrows his mother's car.

28.     Once he arrived at Park Southern, Mr. Rowe entered the parking garage and dropped his mother and sister off near an entrance to the apartment complex.  Mr. Rowe then began to drive toward the parking garage exit, with his three children—then aged 1, 5, and 8—still in the car.

29.     As Mr. Rowe drove toward the parking garage exit, he found it blocked by the Individual SPO Defendants, who were standing in the driveway, as well as by an SPO security vehicle and by another vehicle.

30.     The Individual SPO Defendants were in their SPO uniforms and at least some had firearms, including Defendant Hunter.

31.     Mr. Rowe lightly honked his horn at the SPOs to indicate that he was attempting to exit the parking garage and needed them to move out of the way.  The SPOs did not move, and Mr. Rowe honked his horn again.  At this point, the SPOs moved over slightly, though still partially blocking the exit, and Mr. Rowe began to slowly drive forward in an attempt to maneuver his car around the group to exit the garage.

32.     As Mr. Rowe drove past the group of SPOs and exited the parking garage, he shouted at the group out of frustration with their behavior.  Defendant Hunter yelled back at Mr. Rowe and approached the driver's side door of Mr. Rowe's car, while other Individual SPO Defendants approached the back of the car.

33.     Defendant Hunter demanded Mr. Rowe's identification and Mr. Rowe pulled over his car just outside the parking garage.  Mr. Rowe replied that he did not have to produce identification and told Defendant Hunter that if he needed to see identification, Defendant Hunter should call the police.  Defendant Hunter replied, "I am the police."

34.     During this exchange, Defendant Hunter placed his hand on his firearm and asked another SPO to retrieve pepper spray.

35.     Mr. Rowe asked Defendant Hunter "are you going to shoot me for not giving you ID?"  Defendant Hunter responded "If I have to."

36.     Mr. Rowe asked Defendant Hunter if he was going to use pepper spray against Mr. Rowe while he was still inside the car with his children.  Defendant Hunter responded that Mr. Rowe was under arrest.

37.     Defendant Hunter began to pull on Mr. Rowe's driver's side door handle in an attempt to force open the door.  Mr. Rowe shifted the car into park and unlocked the door to prevent Defendant Hunter from breaking off the door handle.  Defendant Hunter opened the door as Mr. Rowe attempted to turn the car off.

38.      Defendant Hunter reached into the car and grabbed the key from the ignition, breaking it in the process.

39.     Defendants Hunter and Williams and a third Individual SPO Defendant then reached into the car and grabbed Mr. Rowe, attempting to pull him out of the car by force. However, Mr. Rowe was still buckled into his seatbelt.

40.     While attempting to pull Mr. Rowe from the car, Defendant Hunter grabbed Mr. Rowe's dreadlocks, ripped his clothing, and, at one point, grabbed Mr. Rowe by the throat, causing him to choke.

41.     While Mr. Rowe was still in the car, Defendant Williams attempted to handcuff Mr. Rowe behind his back and placed his left hand into the handcuff.

42.     As this was happening, Mr. Rowe's three young children were in the back of the car, screaming.

43.     Given the presence of a firearm and pepper spray, Mr. Rowe feared not only for his safety, but also for the safety of his children.  Mr. Rowe therefore managed to unbuckle his seatbelt and get out of the car.

44.     Defendants Hunter and Williams then placed Mr. Rowe's right arm behind his back, and in handcuffs, and turned Mr. Rowe around so his back faced the car with his hands both handcuffed behind his back.  The handcuffs were secured too tightly, causing Mr. Rowe's wrists and hands to go numb.

45.     Mr. Rowe observed the other SPOs, including the other Individual SPO Defendants, laughing while watching this scene.

46.     Defendants Hunter and Williams tried to communicate with Mr. Rowe, but Mr. Rowe refused and continued to request that MPD be called.  Defendant Williams then walked away from Defendant Hunter and Mr. Rowe to retrieve pepper spray.

47.     Defendant Williams returned to Defendant Hunter and Mr. Rowe and said words to the effect of, "He don't want to talk.  Let's mace him."

48.     Defendant Williams pressed the can of pepper spray against Mr. Rowe's face while Mr. Rowe was handcuffed behind his back and sprayed the pepper spray directly into Mr. Rowe's face.

49.     Mr. Rowe became disoriented and the pepper spray immediately caused Mr. Rowe's eyes to burn and caused both his eyes and nose to run uncontrollably.

50.    Defendants Hunter and Williams pulled Mr. Rowe around toward the back of the car and began searching his pockets.  Mr. Rowe told them he did not consent to a search and tensed and moved his legs to prevent the search.

51.    In response, Defendants Hunter and Williams lifted Mr. Rowe and slammed him into a wooden fence.  Mr. Rowe, still standing, but disoriented from the pepper spray, continued to tense and move his legs as Defendants Hunter, Williams, and other Individual SPO Defendants tried to search his pockets.

52.    Defendant Williams yelled words to the effect of "ground him," and two other Individual SPO Defendants joined Defendants Williams and Hunter to grab Mr. Rowe's legs and upper body.

53.    Mr. Rowe tried to lean forward in an attempt to protect himself and prevent the SPOs from turning him over and slamming him on to his head or neck.  However, Defendants Williams and Hunter and two other Individual SPO Defendants lifted Mr. Rowe into the air and slammed him onto the ground on his back.

54.    After being thrown to the ground, the SPOs eventually allowed Mr. Rowe to sit up. Mr. Rowe remained seated on the ground in handcuffs and with his back against the car, until officers from the MPD arrived.

55.    While waiting for MPD, Mr. Rowe asked the Individual SPO Defendants if he could call his mother to get his children.  In response, Defendant Hunter threatened to put Mr. Rowe and his three young children, who were still seated in the back seat of the car, "into the system."  Defendant Hunter told Mr. Rowe he would never see his kids again.  Defendant Hunter also threatened to bar Mr. Rowe from the property.

56.    Another resident of the Park Southern apartment complex saw Mr. Rowe on the ground, and Mr. Rowe asked her to inform his mother about the incident, which she did.  Mr.

Rowe's mother went to the parking garage and saw Mr. Rowe handcuffed on the ground.  Mr. Rowe's shirt was ripped, he was visibly distraught from the pepper spray, and he was complaining that his hands hurt because the handcuffs were too tight.

57.    Mr. Rowe's mother became extremely concerned by Mr. Rowe's condition and complaints regarding the undue tightness of the handcuffs and the Individual Defendant SPOs' lack of concern for Mr. Rowe's condition.

58.    Mr. Rowe's mother went back into the apartment building to seek the assistance of the Vesta property management staff.  Once Mr. Rowe's mother was in the management staff's office, however, she observed that the staff appeared to already be aware of what had happened.

59.    On information and belief, the Vesta property management staff had access to cameras with views both inside and outside the garage where the incident occurred.

60.    When Mr. Rowe's mother requested the Vesta property management staff's assistance, the property manager, Nicole Kindred, was hesitant to leave the office and dismissive of Mr. Rowe's mother's concerns.

61.     As Mr. Rowe's mother continued to request that the Vesta property manager go outside to assist Mr. Rowe, the property manager said words to the effect of "there's nothing I can do if the police have been called."

62.    Eventually, the Vesta property manager accompanied Mr. Rowe's mother to the parking garage, but only after Mr. Rowe's mother demanded that the Vesta property manager come outside.

63.    The Vesta property manager spoke with the Individual SPO Defendants and asked whether MPD had been called.

64.     As this was happening, Mr. Rowe was still visibly distraught from the pepper spray and violent attack, and complaining to the Individual SPO Defendants that the handcuffs were too tight.

65.     At no time did the Individual SPO Defendants loosen the handcuffs, despite Mr. Rowe's repeated complaints.

66.     The Individual SPO Defendants confirmed that MPD had been called.  The Vesta property manager then told Mr. Rowe's mother that the Individual SPO Defendants were exercising their policing rights and there was nothing she could do.  The Vesta property manager also stated that some of the Individual SPOs Defendants were tenants of Park Southern, and then left the parking garage.

67.     During this time, Mr. Rowe's mother took Mr. Rowe's children out of the car, and then waited with Mr. Rowe and the Individual SPO Defendants for MPD to arrive.

68.     Throughout this incident, the Individual SPO Defendants either participated in intimidating, threatening, and physically attacking Mr. Rowe or witnessed their fellow SPOs intimidate, threaten, and physically attack Mr. Rowe and failed to intervene or otherwise protect Mr. Rowe.

69.     Around 3:45 PM, two MPD officers responded to the scene at Park Southern.  The MPD officers spoke with Mr. Rowe and the Individual SPO Defendants about the incident.

70.     The Individual SPO Defendants admitted to the MPD officers that at least three SPOs attempted to physically pull Mr. Rowe from the car and that one SPO later deployed pepper spray to Mr. Rowe's face.

71.     The Individual SPO Defendants told Mr. Rowe that he was being barred from the property and would not be permitted back for five years.

72.     Mr. Rowe was in a great deal of pain due to, among other things, the way the SPOs had tightly fastened the handcuffs.  One of the MPD Officers removed the original set of handcuffs and replaced them with MPD handcuffs.  During this time, Mr. Rowe provided the officers his account of how the Individual SPO Defendants wrongfully stopped, arrested, and searched him.

73.     MPD Officers determined that there was no probable cause established to arrest Mr. Rowe.  The MPD Officers informed Mr. Rowe that he would not be arrested, released him from the handcuffs, and returned the possessions that the Individual SPO Defendants had seized.

74.     The MPD officers had called an MPD Lieutenant to the scene and invited Mr. Rowe to wait and speak with the Lieutenant.

75.     When the Lieutenant arrived, he spoke with the Individual SPO Defendants and Mr. Rowe about the incident.

76.     The Lieutenant told the Individual SPO Defendants that they did not have the authority to make traffic stops, even on the property to which they are assigned.  The Lieutenant advised the Individual SPO Defendants that if an individual refused to provide their identification, it was fine, and that the SPOs should instead note a description of the individual.  The Lieutenant further advised the Individual SPO Defendants that SPOs are only allowed to use physical force to defend themselves or others.

77.     SPOs in the District of Columbia do not have authority to issue notices of infractions, or tickets, for parking, moving, or non-moving violations under DCMR Title 18 § 3002 and § 3003.

78.     SPOs in the District of Columbia do not have the authority to compel an individual that they have stopped to answer questions or produce identification for examination, and the

refusal to answer questions or produce identification by itself does not establish probable cause to arrest.  MPD General Orders-OPS-304.10 § II.B.4.c.

79.    SPOs in the District of Columbia may use only such force as is reasonably necessary.  MPD General Orders-OPS-304.10 § II.B.6.(a).

80.    SPOs in the District of Columbia shall not use or threaten to use force (1) to "punish a person or retaliate against a person for past conduct" or (2) to "force compliance with a member's request, unless that request is necessary to preserve member or public safety or criminal adjudication."  MPD General Orders-RAR-901.07 § II.A.2.

81.    The Lieutenant also told the Individual SPO Defendants they could not bar Mr. Rowe from the property because of this incident.

82.    Sometime after MPD arrived, a PChange supervisor also came to the scene and spoke with some of the SPOs, the Vesta property management staff, and the MPD officers.

83.    Mr. Rowe and his mother waited several hours for AAA to arrive to replace the key to the car, which was broken as a result of this incident.

84.    As a result of this incident, Mr. Rowe required medical attention for pain in his wrist, neck, back, and leg.  A doctor prescribed Mr. Rowe a muscle relaxer, and he missed work due to his injuries.  Mr. Rowe experienced severe numbness in his hands and pain in his wrist for over a month and a half, and he continues to experience tension in his hands.  For three days after the incident, Mr. Rowe experienced burning in his face as a result of the use of the pepper spray.

85.    Even after Mr. Rowe returned to his job, his injuries impaired his performance at work—loading and delivering packages—because the pain of his injuries decreased the efficiency with which Mr. Rowe was able to work.

86.    Because of this incident involving the Individual SPO Defendants, Mr. Rowe becomes physically and emotionally tense and anxious every time he sees SPOs at Park Southern,

and often elsewhere.  Mr. Rowe knows that he could have died that day, given the excessive force used against him and the presence of a firearm.

87.    Mr. Rowe has no criminal record and has never had a physical interaction with any police officers or security personnel prior to this incident.  However, because of this incident, interacting with SPOs has become difficult for Mr. Rowe.

88.    The tension and anxiety Mr. Rowe experiences when near SPOs is even worse when he is with his children because of the fear he felt for them during the incident, the humiliation he suffered in front of them, and because of the anxiety they developed when visiting their grandmother's residence at Park Southern as a result of the incident.  Mr. Rowe fears that another incident will happen every time he is with his children at Park Southern.

## COUNT ONE: VIOLATION OF THE FOURTH AMENDMENT – UNLAWFUL SEIZURE

### Against the Individual SPO Defendants

89.    Mr. Rowe repeats and incorporates by reference each allegation contained in the preceding paragraphs as if fully set forth herein.

90.    Mr. Rowe asserts this count under 42 U.S.C. § 1983 against all Individual SPO Defendants.

91.    The Individual SPO Defendants were at all times relevant to the actions alleged herein, state actors and persons acting under color of state law within the meaning of Section 1983 because they are commissioned by the D.C. government to exercise police powers.

92.    When the Individual SPO Defendants, in uniform, and some of whom were armed, approached Mr. Rowe's car, assaulted him, attempted to physically drag Mr. Rowe out of his car, and placed him in handcuffs, they seized Mr. Rowe under the color of law.  The Individual SPO Defendants had no legal, articulable basis to suspect that Mr. Rowe had committed, was

15

committing, or was about to commit any crime, but rather seized Mr. Rowe in response to Mr. Rowe yelling at them after they continued to block the exit of the parking garage.

93.     As a result of the seizure, Mr. Rowe suffered from pain in his wrists, neck, back, and legs, and his face burned for several days from the pepper spray.  Additionally, because Defendants placed the handcuffs too tightly on Mr. Rowe, he experienced severe numbness in his hands and pain in his wrist for over a month and a half.  Mr. Rowe continues to experience tension in his hands.

94.     Mr. Rowe also incurred costs from the medical attention he sought and lost wages from missing work.

95.     The Individual SPO Defendants' conduct occurred under color of law and constituted callous indifference and reckless disregard for Mr. Rowe's rights under the Fourth Amendment.

96.     The actions of the Individual SPO Defendants are the direct cause of the injuries described above.  Mr. Rowe is entitled to general, special, and punitive damages.

## COUNT TWO: FAILURE TO INTERVENE REGARDING VIOLATIONS OF FOURTH AMENDMENT – UNREASONABLE SEIZURE

**In the Alternative to Count One Against Defendants James Parker, Damion Philson, John Doe 1, John Doe 2, and John Doe 3**

97.     Mr. Rowe repeats and incorporates by reference each allegation contained in the preceding paragraphs as if fully set forth herein.

98.     Mr. Rowe asserts this count under 42 U.S.C. § 1983 in the alternative to Count One against Defendants Parker, Philson, John Doe 1, John Doe 2, and John Doe 3.

99.     Defendants Parker, Philson, John Doe 1, John Doe 2, and John Doe 3 were at all times relevant to the actions alleged herein, state actors and persons acting under color of state law within the meaning of Section 1983 because they are commissioned by the D.C. government to exercise police powers.

100.    Defendants Parker, Philson, John Doe 1, John Doe 2, and John Doe 3 were at all times present, in uniform, and at least some of whom were armed, while Mr. Rowe was unlawfully stopped and seized.

101.    To the extent Defendants Parker, Philson, John Doe 1, John Doe 2, and John Doe 3 did not participate in the unlawful seizure of Mr. Rowe, they witnessed their fellow SPOs seize Mr. Rowe in violation of his Fourth Amendment rights, knew or had reason to know that their fellow SPOs were committing a Constitutional violation, had a reasonable opportunity to prevent the unlawful seizure by intervening to protect Mr. Rowe, and failed to do so.

102.    The conduct of Defendants Parker, Philson, John Doe 1, John Doe 2, and John Doe 3 occurred under color of law and constituted callous indifference and reckless disregard for Mr. Rowe's rights under the Fourth Amendment.

103.    The actions of the Individual SPO Defendants are the cause of the injuries described above.  Mr. Rowe is entitled to general, special, and punitive damages.

## COUNT THREE: VIOLATION OF THE FOURTH AMENDMENT – UNREASONABLE SEARCH

### Against the Individual SPO Defendants

104.    Mr. Rowe repeats and incorporates by reference each allegation contained in the preceding paragraphs as if fully set forth herein.

105.    Mr. Rowe asserts this count under 42 U.S.C. § 1983 against all Individual SPO Defendants.

106.    The Individual SPO Defendants were at all times relevant to the actions alleged herein, state actors and persons acting under color of state law within the meaning of Section 1983 because they are commissioned by the D.C. government to exercise police powers.

107.    During the unlawful seizure of Mr. Rowe, Defendant Hunter, Williams, and other Individual SPO Defendants searched Mr. Rowe's person by reaching into his pockets and

removing all items, while Individual SPO Defendants restrained Mr. Rowe, in violation of his constitutional rights.

108.    Mr. Rowe did not consent to any search of his person, and there was no lawful basis for the search or the seizure of his personal items.

109.    Defendants' conduct occurred under color of law and constituted callous indifference and reckless disregard for Mr. Rowe's rights under the Fourth Amendment.

110.    The actions of the Individual SPO Defendants are the direct cause of the injuries described above.  Mr. Rowe is entitled to general, special, and punitive damages.

## COUNT FOUR: FAILURE TO INTERVENE REGARDING VIOLATIONS OF FOURTH AMENDMENT – UNREASONABLE SEARCH

**In the Alternative to Count Three Against Defendants James Parker, Damion Philson, Stefan Williams, John Doe 1, John Doe 2, and John Doe 3**

111.    Mr. Rowe repeats and incorporates by reference each allegation contained in the preceding paragraphs as if fully set forth herein.

112.    Mr. Rowe asserts this count under 42 U.S.C. § 1983 in the alternative to Count Two against Defendants Parker, Philson, Williams, John Doe 1, John Doe 2, and John Doe 3.

113.    Defendants Parker, Philson, Williams, John Doe 1, John Doe 2, and John Doe 3 were at all times relevant to the actions alleged herein, state actors and persons acting under color of state law within the meaning of Section 1983 because they are commissioned by the D.C. government to exercise police powers.

114.    Defendants Parker, Philson, Williams, John Doe 1, John Doe 2, and John Doe 3 were at all times present, in uniform, and at least some of whom were armed while Mr. Rowe was unlawfully searched.

115.    To the extent Defendants Parker, Philson, Williams, John Doe 1, John Doe 2, and John Doe 3 did not participate in the unlawful search of Mr. Rowe, they witnessed their fellow SPOs search Mr. Rowe in violation of his Fourth Amendment rights, knew or had reason to know

that their fellow SPOs were committing a Constitutional violation, had a reasonable opportunity to prevent the unlawful search by intervening to protect Mr. Rowe, and failed to do so.

116.    The conduct of Defendants Parker, Philson, Williams, John Doe 1, John Doe 2, and John Doe 3 occurred under color of law and constituted callous indifference and reckless disregard for Mr. Rowe's rights under the Fourth Amendment.

117.    The actions of the Individual SPO Defendants are the cause of the injuries described above.  Mr. Rowe is entitled to general, special, and punitive damages.

<u>**COUNT FIVE: VIOLATION OF THE FOURTH AND FIFTH AMENDMENTS –
EXCESSIVE FORCE**</u>

**Against the Individual SPO Defendants**

118.    Mr. Rowe repeats and incorporates by reference each allegation contained in the preceding paragraphs as if fully set forth herein.

119.    Mr. Rowe asserts this count under 42 U.S.C. § 1983 against all Individual SPO Defendants.

120.    The Individual SPO Defendants were at all times relevant to the actions alleged herein, state actors and persons acting under color of state law within the meaning of Section 1983 because they are commissioned by the D.C. government to exercise police powers.

121.    Mr. Rowe did not engage in any criminal conduct.

122.    Mr. Rowe was not a threat to the safety of the SPOs, himself, nor others.

123.    Mr. Rowe had a clearly established constitutional right under the Fourth Amendment to be secure in his person from unreasonable seizure through excessive force.

124.    Mr. Rowe also had a clearly established constitutional right under the Fifth Amendment of the U.S. Constitution to bodily integrity and to be free from excessive force by law enforcement.

125.    The Individual SPO Defendants' actions and use of force described herein, were objectively unreasonable in light of the facts and circumstances.

126.    As a result of the excessive force used, Mr. Rowe suffered from pain in his wrists, neck, back, and legs, and his face burned for several days from the pepper spray.  Additionally, because Defendants placed the handcuffs too tightly on Mr. Rowe, he experienced severe numbness in his hands and pain in his wrist for over a month and a half and continues to experience tension in his hands.

127.    Mr. Rowe also incurred costs from the medical attention he sought and lost wages from missing work.

128.    The Individual SPO Defendants' conduct occurred under color of law and constituted callous indifference and reckless disregard for Mr. Rowe's rights under the Fourth and Fifth Amendments.

129.    The actions of the Individual SPO Defendants are the direct cause of the injuries described above.  Mr. Rowe is entitled to general, special, and punitive damages.

## COUNT SIX: FAILURE TO INTERVENE REGARDING VIOLATIONS OF FOURTH AND FIFTH AMENDMENTS – EXCESSIVE FORCE

**In the Alternative to Count Five Against Defendants James Parker, Damion Philson, Stefan Williams, John Doe 1, John Doe 2, and John Doe 3**

130.    Mr. Rowe repeats and incorporates by reference each allegation contained in the preceding paragraphs as if fully set forth herein.

131.    Mr. Rowe asserts this count under 42 U.S.C. § 1983 in the alternative to Count Five against Defendants Parker, Philson, Williams, John Doe 1, John Doe 2, and John Doe 3.

132.    Defendants Parker, Philson, Williams, John Doe 1, John Doe 2, and John Doe 3 were at all times relevant to the actions alleged herein, state actors and persons acting under color of state law within the meaning of Section 1983 because they are commissioned by the D.C. government to exercise police powers.

133.    Defendants Parker, Philson, Williams, John Doe 1, John Doe 2, and John Doe 3 were at all times present, in uniform, and at least some of whom were armed while excessive force was unlawfully used against Mr. Rowe.

134.    To the extent Defendants Parker, Philson, Williams, John Doe 1, John Doe 2, and John Doe 3 did not participate in the unlawful use of excessive force against Mr. Rowe, they witnessed their fellow SPOs use unlawfully excessive force against Mr. Rowe in violation of his Fourth and Fifth Amendment rights, knew or had reason to know that their fellow SPOs were committing a Constitutional violation, had a reasonable opportunity to prevent the unlawful use of excessive force by intervening to protect Mr. Rowe, and failed to do so.

135.    The conduct of Defendants Parker, Philson, Williams, John Doe 1, John Doe 2, and John Doe 3 occurred under color of law and constituted callous indifference and reckless disregard for Mr. Rowe's rights under the Fourth and Fifth Amendments.

136.    The actions of the Individual SPO Defendants are the cause of the injuries described above.  Mr. Rowe is entitled to general, special, and punitive damages.

## COUNT SEVEN: ASSAULT – DISTRICT OF COLUMBIA COMMON LAW
### Against Defendants Bryan Hunter and Stefan Williams

137.    Mr. Rowe repeats and incorporates by reference each allegation contained in the preceding paragraphs as if fully set forth herein.

138.    Mr. Rowe asserts this count under District of Columbia common law against Defendants Hunter and Williams.

139.    Defendant Hunter intentionally threatened to do bodily harm to Mr. Rowe when he approached the car to prevent Mr. Rowe from exiting the parking garage, attempted to force open the car door with Mr. Rowe inside, put his hands on his firearm and threatened to shoot Mr. Rowe if he had to, and attempted, along with other Individual SPO Defendants, to pull Mr. Rowe from the car.

140.    Defendant Williams threatened to do bodily harm to Mr. Rowe when he threatened to spray Mr. Rowe with pepper spray and held the can of pepper spray to his face.  Defendant William also threatened to do bodily harm to Mr. Rowe when he threatened to slam his body to the ground.

141.    The conduct of Defendants Hunter and Williams was willful and outrageous.

142.    As a result of this assault, Mr. Rowe suffered substantial harm, including, but not limited to, mental and emotional distress.

143.    The actions of the Individual SPO Defendants are the direct cause of the injuries described above.  Mr. Rowe is entitled to general, special, and punitive damages.

## COUNT EIGHT: BATTERY – DISTRICT OF COLUMBIA COMMON LAW
### Against the Individual SPO Defendants

144.    Mr. Rowe repeats and incorporates by reference each allegation contained in the preceding paragraphs as if fully set forth herein.

145.    Mr. Rowe asserts this count under District of Columbia law against all Individual SPO Defendants.

146.    The Individual SPO Defendants engaged in harmful and offensive contact of Mr. Rowe by grabbing his person, grabbing his dreadlocks, choking him, spraying his face with pepper spray, tightly handcuffing him behind his back, and slamming his body on the ground.

147.    The actions of the Individual SPO Defendants were deliberate, outrageous, reckless toward the safety of Mr. Rowe, and undertaken with willful disregard for Mr. Rowe's rights.

148.    The actions of the Individual SPO Defendants caused Mr. Rowe serious physical and emotional injuries, including pain in his wrists, neck, back, and legs, and burning in his face for several days from the pepper spray.  Additionally, because Defendants placed the handcuffs too tightly on Mr. Rowe, he experienced severe numbness in his hands and pain in his wrist for over a month and a half and continues to experience tension in his hands.

149.    Mr. Rowe also incurred costs from the medical attention he sought and lost wages from missing work.

150.    The actions of the Individual SPO Defendants are the direct cause of the injuries described above.  Mr. Rowe is entitled to general, special, and punitive damages.

## COUNT NINE: FALSE IMPRISONMENT – DISTRICT OF COLUMBIA COMMON LAW

### Against the Individual SPO Defendants

151.    Mr. Rowe repeats and incorporates by reference each allegation contained in the preceding paragraphs as if fully set forth herein.

152.    Mr. Rowe asserts this count under District of Columbia common law against all Individual SPO Defendants.

153.    The Individual SPO Defendants falsely imprisoned Mr. Rowe by requesting his identification, approaching the vehicle in a threatening manner, threatening Mr. Rowe, telling Mr. Rowe he was under arrest, and forcing him out of his vehicle, all with no valid basis or warrant.

154.    The Individual SPO Defendants further falsely imprisoned Mr. Rowe by forcibly restraining him in handcuffs and slamming him into a fence and onto the ground against his will, with no valid basis or warrant.

155.    Mr. Rowe was then held against his will by the Individual SPO Defendants until MPD arrived and was detained and handcuffed in total for approximately one hour due to the unlawful actions of the Individual SPO Defendants.

156.    The lengthy imprisonment of Mr. Rowe, coupled with the forcible manner in which he was dragged from his car and handcuffed—all without any valid basis—was an outrageous and willful violation of the law.

157.    As a result of this false imprisonment, Mr. Rowe suffered substantial harm, including, but not limited to, emotional distress.

158.    At all times, the Individual SPO Defendants acted in concert and aided and abetted each other by blocking Mr. Rowe's car, and substantially assisted one another to restrain Mr. Rowe in handcuffs.

159.    The actions of the Individual SPO Defendants are the direct cause of the injuries described above.  Mr. Rowe is entitled to general, special, and punitive damages.

## COUNT TEN: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS – DISTRICT OF COLUMBIA COMMON LAW

### Against the Individual SPO Defendants

160.    Mr. Rowe repeats and incorporates by reference each allegation contained in the preceding paragraphs as if fully set forth herein.

161.    Mr. Rowe asserts this count under District of Columbia law against all Individual SPO Defendants.

162.    The Individual SPO Defendants intentionally assaulted and battered Mr. Rowe, violated his constitutional rights, and abused their power as SPOs, acting with intentional and reckless disregard for his rights.  By (1) violently attempting to pull Mr. Rowe from his car, (2) threatening to use a firearm and pepper spray on Mr. Rowe while he was still in the car with his children, (3) pepper spraying him directly in his face and eyes after he was handcuffed, (4) violently handcuffing and slamming Mr. Rowe into a wooden fence and onto the ground, (5) threatening to put Mr. Rowe and his children into "the system" so that Mr. Rowe would never see them again, and (6) threatening to bar Mr. Rowe from the property, the Individual SPO Defendants intended to or recklessly caused Mr. Rowe to fear for his safety and the safety of his children.

163.    As a result of the Individual SPO Defendants' intentional and/or reckless acts, Mr. Rowe suffered and continues to suffer severe emotional distress.  Mr. Rowe becomes physically and emotionally tense and anxious whenever he visits Park Southern, especially when he encounters an SPO.  He also sometimes becomes physically and emotionally tense and anxious

when encountering SPOs and security guards outside of the property.  Mr. Rowe experienced

humiliation from the encounter, which took place in front of his children.  Mr. Rowe's emotional

distress from the excessive violence was made even more severe by the threats made by Defendant

Hunter (1) to put Mr. Rowe's children into the system, (2) to prevent Mr. Rowe from ever seeing

his children again, and (3) to bar Mr. Rowe from the property where his mother lives.  Mr. Rowe

relives that trauma and fear every time he returns to Park Southern.

164.    The actions of the Individual SPO Defendants are the direct cause of the injuries

described above.  Mr. Rowe is entitled to monetary damages to compensate him for his emotional

injury.

165.    Mr. Rowe is further entitled to an award of punitive damages to punish the

Defendants for their willful and malicious and/or reckless conduct toward him.

166.    The actions of the Individual SPO Defendants are the direct cause of the injuries

described above.  Mr. Rowe is entitled to general, special, and punitive damages.

## COUNT ELEVEN: VICARIOUS LIABILITY FOR ASSAULT – DISTRICT OF COLUMBIA COMMON LAW

### Against Defendant PChange Protective Services LLC

167.    Mr. Rowe repeats and incorporates by reference each allegation contained in the

preceding paragraphs as if fully set forth herein.

168.    Mr. Rowe asserts this count under District of Columbia common law against

Defendant PChange.

169.    At all relevant times during the circumstances described in this Complaint,

Defendants Hunter and Williams were acting within the scope of their duty as SPOs employed by

PChange, contracted by Vesta, and appointed pursuant to D.C. Code § 5-129.02.

170.    PChange is liable for the acts of its agents, and should be held liable for the common law claim for assault against Defendants Hunter and Williams and pay appropriate damages to Mr. Rowe.

## COUNT TWELVE: VICARIOUS LIABILITY FOR BATTERY – DISTRICT OF COLUMBIA COMMON LAW

### Against Defendant PChange Protective Services LLC

171.    Mr. Rowe repeats and incorporates by reference each allegation contained in the preceding paragraphs as if fully set forth herein.

172.    Mr. Rowe asserts this count under District of Columbia law against Defendant PChange.

173.    At all relevant times during the circumstances described in this Complaint, the Individual SPO Defendants were acting within the scope of their duty as SPOs employed by PChange, contracted by Vesta, and appointed pursuant to D.C. Code § 5-129.02.

174.    PChange is liable for the acts of its agents and should be held liable for the common law claim for battery against the Individual SPO Defendants and pay appropriate damages to Mr. Rowe.

## COUNT THIRTEEN: VICARIOUS LIABILITY FOR FALSE IMPRISONMENT – DISTRICT OF COLUMBIA COMMON LAW

### Against Defendant PChange Protective Services LLC

175.    Mr. Rowe repeats and incorporates by reference each allegation contained in the preceding paragraphs as if fully set forth herein.

176.    Mr. Rowe asserts this count under District of Columbia law against Defendant PChange.

177.    At all relevant times during the circumstances described in this Complaint, the Individual SPO Defendants were acting within the scope of their duty as SPOs employed by PChange, contracted by Vesta, and appointed pursuant to D.C. Code § 5-129.02.

178.     PChange is liable for the acts of its agents, and should be held liable for the common law claim for false imprisonment against the Individual SPO Defendants and pay appropriate damages to Mr. Rowe.

## COUNT FOURTEEN: VICARIOUS LIABILITY FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS – DISTRICT OF COLUMBIA COMMON LAW

### Against Defendant PChange Protective Services LLC

179.     Mr. Rowe repeats and incorporates by reference each allegation contained in the preceding paragraphs as if fully set forth herein.

180.     Mr. Rowe asserts this count under District of Columbia law against Defendant PChange.

181.     At all relevant times during the circumstances described in this Complaint, the Individual SPO Defendants were acting within the scope of their duty as SPOs employed by PChange, contracted by Vesta, and appointed pursuant to D.C. Code § 5-129.02.

182.     PChange is liable for the acts of its agents and should be held liable for the common law claim for intentional infliction of emotional distress against the Individual SPO Defendants and pay appropriate damages to Mr. Rowe.

## COUNT FIFTEEN: VICARIOUS LIABILITY FOR ASSAULT – DISTRICT OF COLUMBIA COMMON LAW

### Against Defendant Vesta Corporation

183.     Mr. Rowe repeats and incorporates by reference each allegation contained in the preceding paragraphs as if fully set forth herein.

184.     Mr. Rowe asserts this count under District of Columbia common law against Defendant Vesta.

185.     At all relevant times during the circumstances described in this Complaint, Defendants Hunter and Williams were acting within the scope of their duty as SPOs employed by PChange, contracted by Vesta, and appointed pursuant to D.C. Code § 5-129.02.

186.    Vesta, which contracts with PChange to provide security services at the Park Southern property, has and exercises the power to control the conduct of the SPOs employed by PChange, placing the SPOs in an employee-employer or master-servant relationship with Vesta.

187.    In the alternative, Vesta retains liability over the acts of its independent contractor, PChange, and its agents, because their work as SPOs at Park Southern implicated Vesta's nondelegable duties to their tenants and guests, and the SPOs' work was inherently dangerous.

188.    Vesta is liable for the acts of its agents, or independent contractors performing inherently dangerous work that also implicate nondelegable duties, and should be held liable for the common law claim for assault against Defendants Hunter and Williams and pay appropriate damages to Mr. Rowe.

## COUNT SIXTEEN: VICARIOUS LIABILITY FOR BATTERY – DISTRICT OF COLUMBIA COMMON LAW

### Against Defendant Vesta Corporation

189.    Mr. Rowe repeats and incorporates by reference each allegation contained in the preceding paragraphs as if fully set forth herein.

190.    Mr. Rowe asserts this count under District of Columbia common law against Defendant Vesta.

191.    At all relevant times during the circumstances described in this Complaint, the Individual SPO Defendants were acting within the scope of their duty as SPOs employed by PChange, contracted by Vesta, and appointed pursuant to D.C. Code § 5-129.02.

192.    Vesta, which contracts with PChange to provide security services at the Park Southern property, has and exercises the power to control the conduct of the SPOs employed by PChange, placing the SPOs in an employee-employer or master-servant relationship with Vesta.

193.    In the alternative, Vesta retains liability over the acts of its independent contractor, PChange, and its agents, because their work as SPOs at Park Southern implicated Vesta's nondelegable duties to their tenants and guests, and the SPOs' work was inherently dangerous.

194.    Vesta is liable for the acts of its agents, or independent contractors performing inherently dangerous work that also implicate nondelegable duties, and should be held liable for the common law claim for battery against the Individual SPO Defendants and pay appropriate damages to Mr. Rowe.

## COUNT SEVENTEEN: VICARIOUS LIABILITY FOR FALSE IMPRISONMENT – DISTRICT OF COLUMBIA COMMON LAW

### Against Defendant Vesta Corporation

195.    Mr. Rowe repeats and incorporates by reference each allegation contained in the preceding paragraphs as if fully set forth herein.

196.    Mr. Rowe asserts this count under District of Columbia common law against Defendant Vesta.

197.    At all relevant times during the circumstances described in this Complaint, the Individual SPO Defendants were acting within the scope of their duty as SPOs employed by PChange, contracted by Vesta, and appointed pursuant to D.C. Code § 5-129.02.

198.    Vesta, which contracts with PChange to provide security services at the Park Southern property, has and exercises the power to control the conduct of the SPOs employed by PChange, placing the SPOs in an employee-employer or master-servant relationship with Vesta.

199.    In the alternative, Vesta retains liability over the acts of its independent contractor, PChange, and its agents, because their work as SPOs at Park Southern implicated Vesta's nondelegable duties to their tenants and guests, and the SPOs' work was inherently dangerous.

200.    Vesta is liable for the acts of its agents, or independent contractors performing inherently dangerous work that also implicate nondelegable duties, and should be held liable for

the common law claim for false imprisonment against the Individual SPO Defendants and pay appropriate damages to Mr. Rowe.

## COUNT EIGHTEEN: VICARIOUS LIABILITY FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS – DISTRICT OF COLUMBIA COMMON LAW

### Against Defendant Vesta Corporation

201.    Mr. Rowe repeats and incorporates by reference each allegation contained in the preceding paragraphs as if fully set forth herein.

202.    Mr. Rowe asserts this count under District of Columbia common law against Defendant Vesta.

203.    At all relevant times during the circumstances described in this Complaint, the Individual SPO Defendants were acting within the scope of their duty as SPOs employed by PChange, contracted by Vesta, and appointed pursuant to D.C. Code § 5-129.02.

204.    Vesta, which contracts with PChange to provide security services at the Park Southern property, has and exercises the power to control the conduct of the SPOs employed by PChange, placing the SPOs in an employee-employer or master-servant relationship with Vesta.

205.    In the alternative, Vesta retains liability over the acts of its independent contractor, PChange, and its agents, because their work as SPOs at Park Southern implicated Vesta's nondelegable duties to their tenants and guests, and the SPOs' work was inherently dangerous.

206.    Vesta is liable for the acts of its agents, or independent contractors performing inherently dangerous work that also implicate nondelegable duties, and should be held liable for the common law claim for intentional infliction of emotional distress against the Individual SPO Defendants and pay appropriate damages to Mr. Rowe.

## COUNT NINETEEN: NEGLIGENT SUPERVISION – DISTRICT OF COLUMBIA COMMON LAW

### Against Defendant Vesta Corporation

207.    Mr. Rowe repeats and incorporates by reference each allegation contained in the preceding paragraphs as if fully set forth herein.

208.    Mr. Rowe asserts this count under District of Columbia common law against Vesta.

209.    Vesta negligently supervised the Individual SPO Defendants because its property management staff knew or should have known that the Individual SPO Defendants were behaving dangerously regarding Mr. Rowe and failed to take any action, including adequately supervise the Individual SPO Defendants.

210.    Mr. Rowe's mother informed the Park Southern property management staff of the Individual SPO Defendants' unlawful actions toward Mr. Rowe as the incident was unfolding. The Vesta property management staff, however, refused to take supervisory action after being informed of the Individual SPO Defendants' unlawful actions, merely confirming that MPD had been called and endorsing the Individual SPO Defendants' conduct as an exercise of their policing rights.

211.    Mr. Rowe was visibly distraught from the incident and complaining that the handcuffs were too tight in the presence of Vesta's property manager, who was outside communicating with the Individual SPO Defendants.  But, Vesta's property manager took no action.

212.    Further, before Vesta's property manager came outside, she and the other Vesta property management staff already appeared to be aware of the incident, but had taken no action.

213.    The actions of Vesta are the cause of the injuries described above, and Mr. Rowe is entitled to general, special, and punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Mr. Rowe respectfully requests that this Court:

A. Enter a judgment in favor of Mr. Rowe and grant the following:

B. Declare that the Individual SPO Defendants violated Mr. Rowe's rights under the Fourth Amendment to be free from unlawful seizure and unreasonable search;

C. Declare that the Individual SPO Defendants violated Mr. Rowe's rights under the Fourth and Fifth Amendments to be free from excessive force;

D. Declare that Defendants Hunter, Williams, PChange, and Vesta violated Mr. Rowe's rights under District of Columbia law to be free from assault;

E. Declare that all Defendants violated Mr. Rowe's rights under District of Columbia law to be free from battery, false imprisonment, and intentional infliction of emotional distress;

F. Declare that Defendant Vesta violated Mr. Rowe's rights under District of Columbia law by negligently supervising the Individual SPO Defendants;

G. Award Mr. Rowe compensatory damages for the pain and suffering, lost compensation, and medical expenses caused by Defendants' actions;

H. Award Mr. Rowe punitive damages arising from the nature of the Defendants' actions;

I. Award Mr. Rowe the costs and reasonable attorneys' fees incurred in connection with this action;

J. Enter an appropriate injunction enjoining Defendants from further deprivations of Mr. Rowe's constitutional rights and rights under District of Columbia law; enjoining Vesta from deploying SPOs in a similar manner at Park Southern; requiring mandatory training of the Individual SPO Defendants on searches, seizures, and use of force; and requiring mandatory training of the Vesta Park Southern property management staff

regarding the deployment and supervision of SPOs;

K.  Grant such further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.


Dated: October 12, 2022

Respectfully Submitted,

 /s/  Thomas A. Bednar
Thomas A. Bednar (D.C. Bar No. 493640)
Jessica Hollis (D.C. Bar No. 1618781)
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
2112 Pennsylvania Avenue, NW
Washington, DC 20037
Phone: (202) 974-1500
Fax: (202) 974-1999
*tbednar@cgsh.com*
*jhollis@cgsh.com*

 /s/ Jacqueline Kutnik-Bauder/with
permission
Jacqueline Kutnik-Bauder*
Dennis A. Corkery (DC Bar No. 1016991)
Carlos A. Andino*
WASHINGTON LAWYERS'
COMMITTEE FOR CIVIL RIGHTS AND
URBAN AFFAIRS
700 14th St., NW
Ste. 400
Washington, DC 20005
(202) 319-1000
jacqueline_kutnik-bauder@washlaw.org
dennis_corkery@washlaw.org
carlos_andino@washlaw.org

*Application for admission pro hac vice
forthcoming

*Counsel for Plaintiff*