**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **MICHAEL ROWE,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 22-3098 (JEB)** |
| **PCHANGE PROTECTIVE SERVICES, LLC**, *et al.*, | |
| **Defendants.** | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Michael Rowe alleges that a group of Special Police Officers employed by defendant PChange Protective Services assaulted and handcuffed him as he exited the parking garage of his mother's apartment building where they worked.  In this lawsuit, Rowe brings myriad causes of action arising from those events against PChange, Vesta Management (the apartment building's management company), and eight of PChange's officers.  Plaintiff seeks monetary damages and also asks the Court to enjoin Defendants from further depriving him of his rights in the future.  Several Defendants now move to dismiss that claim for injunctive relief for lack of standing.  Agreeing, the Court will grant the Motion.

## I.    Background

The Court draws the facts from Plaintiff's Amended Complaint and for purposes of this Motion presumes them to be true.  On October 26, 2021, Rowe drove his mother, sister, and three children to the Park Southern apartment complex in Washington, D.C., where his mother lives.  See ECF No. 19 (Amended Complaint), ¶ 28.  He entered the building's parking garage and dropped off his mother and sister, and he then turned around to drive towards the garage

exit.  Id., ¶ 29.  As Rowe approached the exit, he noticed that it was blocked by several Special

Police Officers — privately hired security officers whom the city empowers to act as police on

an individual's or company's property.  Id., ¶¶ 15–18, 30–31.  Rowe lightly honked his horn and

then (when the officers did not move) honked again.  Id., ¶ 32.  The officers moved slightly out

of the way and Rowe navigated past them.  Id.

        As he drove by, Rowe apparently offered the SPOs some choice words.  Id., ¶ 33 (he

"shouted at the group out of frustration with their behavior").  In response, one of the officers

stopped him and demanded identification; Plaintiff refused to provide it.  Id., ¶ 34.  Several

officers then approached the car, and one reached for his firearm and asked another officer for

pepper spray.  Id., ¶ 35.  The officers forced open the car door and dragged Rowe from the

vehicle, ripping his clothing and grabbing his throat in the process.  Id., ¶¶ 38–41.  One officer

handcuffed Rowe so tightly that his wrists and hands went numb, and he shoved Rowe's back

against the car.  Id., ¶¶ 42 – 45.  Several other SPOs stood by laughing while this scene unfolded.

Id., ¶ 46.

        As Plaintiff stood handcuffed against the car, an officer pepper-sprayed him directly in

the face.  Id., ¶¶ 49–50.  Rowe nonetheless continued to decline the officers' request to search

him.  Id., ¶ 51.  In response, they slammed him into a wooden fence and then onto the ground.

Id., ¶¶ 52–54.  With Rowe on the ground, the officers threatened that his three young children,

screaming in the back seat of the car, would be taken away and Rowe would never see them

again.  Id., ¶ 56.  Apartment management staff with access to cameras monitoring the parking

garage confirmed that the SPOs had called the Metropolitan Police Department to the scene but

otherwise did nothing to stop the assault.  Id., ¶¶ 60–63, 67.

On their arrival, MPD officers removed Rowe's handcuffs and determined that there was not probable cause to arrest him. <u>Id.</u>, ¶¶ 73–74.  They also told the SPOs that they could not detain individuals for failing to provide identification and that they could use physical force only to defend themselves or others. <u>Id.</u>, ¶ 77.  Rowe's Amended Complaint notes several provisions in particular that prohibit SPOs from using excessive force and bar them from threatening or using force to retaliate against others. <u>Id.</u>, ¶¶ 78–81.

As a result of this incident, Plaintiff suffered physical harm to his wrist, neck, back, and leg, as well as emotional trauma that leaves him anxious every time he sees SPOs at the apartment complex. <u>Id.</u>, ¶¶ 85–89.  He also fears that another incident will happen every time he is with his children at the complex. <u>Id.</u>, ¶ 89.

Rowe accordingly filed this suit against PChange, the apartment complex's management company, and eight individual SPOs. <u>Id.</u>, ¶¶ 5–14.  His Complaint contains 19 counts under federal and district law. <u>Id.</u>, ¶¶ 90–214.  Rowe seeks monetary damages and, relevant here, injunctive relief "enjoining Defendants from further deprivations of Mr. Rowe's constitutional rights and rights under District of Columbia law." <u>Id.</u> at 32.  Defendants now move to dismiss only Rowe's request for injunctive relief. <u>See</u> ECF No. 36 (Motion to Dismiss Claim for Injunctive Relief) at 1.

## II.     Legal Standard

Because Defendants move to dismiss for lack of standing, the Court will apply the standards for Federal Rule of Civil Procedure 12(b)(1).  When a defendant seeks dismissal under that rule, the plaintiff must show that the court has subject-matter jurisdiction to hear his claim. <u>See</u> <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992); <u>US Ecology, Inc. v. U.S. Department of Interior</u>, 231 F.3d 20, 24 (D.C. Cir. 2000).  "Absent subject matter jurisdiction

over a case, the court must dismiss [the claim]." <u>Bell v. U.S. Department of Health & Human Services</u>, 67 F. Supp. 3d 320, 322 (D.D.C. 2014).

"A Rule 12(b)(1) motion imposes on the court an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." <u>Grand Lodge of the Fraternal Order of Police v. Ashcroft</u>, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). "For this reason, 'the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." <u>Id.</u> at 13–14 (quoting 5A Charles A. Wright & Arthur R. Miller, Fed. Practice & Procedure § 1350 (2d ed. 1987)) (alteration in original). Additionally, unlike with a motion to dismiss under Rule 12(b)(6), the Court "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction." <u>Jerome Stevens Pharms., Inc. v. Food & Drug Admin.</u>, 402 F.3d 1249, 1253 (D.C. Cir. 2005); <u>see also</u> <u>Herbert v. Nat'l Acad. of Sciences</u>, 974 F.2d 192, 197 (D.C. Cir. 1992).

## III.   Analysis

In seeking dismissal of the prayer for injunctive relief here, Defendants maintain that Plaintiff lacks standing to pursue such a remedy. Article III of the United States Constitution limits the jurisdiction of federal courts to resolving "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. A party's standing "is an essential and unchanging part of the case-or-controversy requirement of Article III." <u>Lujan</u>, 504 U.S. at 560. Standing therefore represents a "predicate to any exercise of [the court's] jurisdiction." <u>Florida Audubon Soc'y v. Bentsen</u>, 94 F.3d 658, 663 (D.C. Cir. 1996). A plaintiff must show standing separately for each form of relief sought. <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95, 105 (1983); <u>see also</u> <u>Davis v. Fed. Election Comm'n</u>, 554 U.S. 724, 734 (2008).

To maintain standing, a plaintiff must meet three criteria.  She must show that she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016).  The "injury in fact" must be both "(a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180 (2000).

When a plaintiff seeks injunctive relief, as Rowe does here, "past injuries alone are insufficient to establish standing." Dearth v. Holder, 641 F.3d 499, 501 (D.C. Cir. 2011). Instead, he must demonstrate that he is "realistically threatened by a repetition of his experience" such that injury is imminent. Haase v. Sessions, 835 F.2d 902, 910–11 (D.C. Cir. 1987) (quoting Lyons, 461 U.S. at 109).  This standard obliges a plaintiff to: (1) "demonstrate [the] existence" of a challenged policy or practice; and (2) establish that he is "likely to be subjected to the policy again." Id. at 911.  Such pleading requires "more than a nebulous assertion of the existence of a 'policy.'" Id.  Identifying only a "pattern of past events" is not enough. See Richard H. Fallon, Jr. et al., Hart and Wechsler's The Federal Courts and the Federal System (7th ed. 2015) at 232 (discussing O'Shea v. Littleton, 414 U.S. 488 (1974)).  Instead, a plaintiff must show that the threat he faces is ultimately "immediate" in nature. Lyons, 461 U.S. at 102–106; Golden v. Zwickler, 394 U.S. 103, 109 (1969).

In Black Lives Matter D.C. v. Trump, 544 F. Supp. 3d 15 (D.D.C. 2021), Judge Dabney Friedrich underscored the first of these two elements — that is, that plaintiffs identify a particular policy or practice as the basis for their claimed risk of future harm.  That opinion held that protesters lacked standing to seek injunctive relief based on their continued demonstrations in Lafayette Square and their fear that law enforcement might in the future again disperse or attack

them.  "Significantly," Judge Friedrich emphasized, "the plaintiffs do not rely on any alleged law or policy as the basis for this claimed risk of future harm."  Id. at 35.  Because the plaintiffs in that case did not "claim that a law or policy has 'ordered or authorized police officer[s] to act in such manner' as allegedly occurred," id. (quoting Lyons, 461 U.S. at 106), she held that their alleged injury was insufficiently immediate and too speculative to confer standing to seek injunctive relief.  Id.

Here, Plaintiff similarly does not point to any identifiable policy or practice based on which he seeks an injunction.  His Complaint mentions only the one incident on October 26, 2021.  Brutal as that interaction may have been, the Complaint does not allege that it signifies any broader policy or custom, explicit or tacit, that Plaintiff specifically challenges.  Indeed, Rowe does not even point to repeated incidents, which might still fall short of a policy, or any other evidence that could establish such a practice.  He has just one event.  While he attempts to disaggregate his interaction with officers into multiple rights violations, see Am. Compl., ¶¶ 78–81, the encounter was brief and all of one piece.  In order to allege that future injury is imminent, then, Plaintiff is left relying on a chain of speculation of future harm similar to (if not more attenuated than) that Judge Friedrich held insufficient for standing in Black Lives Matter D.C..  See 544 F. Supp. 3d at 35–36.

Rowe offers no persuasive counter.  His principal response is to rely on An v. City of New York, 2017 WL 2376576 (S.D.N.Y. June 1, 2017), for the proposition that a court may find standing where a plaintiff is likely to have future interactions with police officers.  But that case's analysis points in precisely the opposite direction here.  There, the court identified Second Circuit caselaw requiring that a plaintiff seeking systemic relief show "both [1] a likelihood of future harm and [2] the existence of an official policy or its equivalent," id. at *2 (quoting Shain

v. Ellison, 356 F.3d 211, 216 (2d Cir. 2004)) (emphasis added) — and then held that Plaintiff

"plausibly alleges the existence of an official policy or its equivalent for purposes of standing."

Id. at *3.  Here, by contrast, Plaintiff has not even tried to allege an official policy or its

equivalent.  One of the necessary factors the court identified in An is thus absent here, leaving

Plaintiff unable to prevail.

Plaintiff's other arguments do not help him clear this hurdle.  He distinguishes

Defendant's cases by arguing that he was not detained for criminal activity and that he will be

subject to policing again in the apartment complex.  See Pl. Opp. at 9–11.  But these arguments

do not help Rowe with his fundamental problem: in the absence of pleading any particular

challenged policy, practice, or custom, he has not explained how his risk of future injury is

imminent.  He accordingly has no standing to seek injunctive relief.

*   *   *

Rowe alleges a deeply disturbing ordeal, and his claims for monetary damages may

proceed.  The future harm he alleges as the basis for injunctive relief, however, is too speculative

to support standing.  The Court will thus excise that element of his sought relief and allow his

suit to otherwise proceed.

## IV.    Conclusion

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss and

dismiss Plaintiff's claim for injunctive relief.  A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date:  March 22, 2023