# EXHIBIT A

# UNITED STATES DISTRICT COURT DISTRICT
# OF THE DISTRICT OF COLUMBIA

MICHAEL ROWE

Plaintiff,

     v.

PCHANGE LLC,
8181 Professional Place, Suite 150
Hyattsville, MD 20785

VESTA MANAGEMENT DC, LLC
820 Southern Avenue SE
Washington, D.C. 20032
and

VESTA CORPORATION
175 Powder Forest Drive
Weatogue, CT 06089
and

VESTA EQUITY CORPORATION
175 Powder Forest Drive
Weatogue, CT 06089
and

VESTA MANAGEMENT CORPORATION
175 Powder Forest Drive
Weatogue, CT 06089
and

VESTA PSRC, LLC
175 Powder Forest Drive
Weatogue, CT 06089
and

800 SOUTHERN AVENUE, LLC
175 Powder Forest Drive
Weatogue, CT 06089
and

BRYAN HUNTER
7105 Valley Park Road, Apt. 201
Capitol Heights, MD 20743
and

Civil Action No.: 1:22-cv-03098-JEB

JURY TRIAL DEMANDED

JAMES PARKER
712 Amer Dr.
Fort Washington, MD 20744

and

DAMION PHILSON
3509 29th Pl.
Temple Hills, MD 20748

and

STEFAN WILLIAMS
8253 Parham Court
Severn, MD 21133

and

DELONTE ALBANY
2430 Kent Village Place
Hyattsville, MD 20785

and

TYAUNA PERRY
1452 D Street NE
Washington, DC 20002

and

SHAMAR PHILLIPS
7166 Lauren Lane, Unit 1002
Easton, MD 21601

and

TYRELL ARRINGTON
245 14th St SE #A
Washington, DC 20003

and

John Does 1-5

                    Defendants.

## SECOND AMENDED COMPLAINT

Michael Rowe, Plaintiff, by and through counsel, brings this action against Defendant

Special Police Officers ("SPOs") Bryan Hunter, James Parker, Damion Philson, Stefan Williams,

Delonte Albany, Tyauna Perry, Shamar Phillips, Tyrell Arrington, and John Does 1-5 (collectively

the "Individual SPO Defendants"); PChange LLC ("PChange"); Vesta Management DC, LLC, Vesta Corporation, Vesta Equity Corporation, Vesta Management Corporation, Vesta PSRC, LLC, and 800 Southern Avenue, LLC ("800 Southern") (collectively "Defendant Vesta" or the "Vesta Entities") (together with PChange and the Individual SPO Defendants, the "Defendants") for unlawfully stopping, searching, and arresting Mr. Rowe through means of excessive force and without justification, in violation of his constitutional rights and District of Columbia ("DC") law. These violations of Mr. Rowe's rights were carried out by the Individual SPO Defendants, stemming from the failure of PChange and the Vesta Entities to supervise the SPOs in their employ, including the Individual SPO Defendants who unlawfully arrested, searched, and used excessive force against Mr. Rowe.  PChange and the Vesta Entities knew or should have known about the Individual SPO Defendants' dangerous or incompetent behavior, including a pattern of prior misconduct and excessive use of force, and that several of them and other PChange SPOs were not effectively licensed as SPOs under District of Columbia law.  Mr. Rowe is entitled to damages for his pain and suffering resulting from the Defendants' actions.  In support of the Second Amended Complaint, Mr. Rowe alleges the following:

## **INTRODUCTION**

On the afternoon of October 26, 2021, Mr. Rowe dropped off his mother and sister at an entrance to the Park Southern apartment complex in Washington, DC, where his mother and sister live.  Mr. Rowe's three children, then aged 1, 5, and 8, were also in the car.  When Mr. Rowe attempted to drive out of the parking garage with his children still in the car, he found it blocked by a group of SPOs who were employed by Defendant PChange and appointed to patrol the Park Southern property.  The SPOs continued to block the exit despite being aware that Mr. Rowe was attempting to exit the property.  Eventually, the SPOs moved just enough for Mr. Rowe to get around them, and he proceeded to drive toward the garage exit.  Frustrated, Mr. Rowe told the SPOs what he thought about their behavior.

In response, Defendants Williams and Hunter, two of the SPOs, walked toward the driver's side door of the car and asked Mr. Rowe for his identification. Mr. Rowe pulled over, but refused to provide his identification, asserting that he did not have to provide this and that the SPOs should call the police if there was an issue. At this point, several other SPOs approached the back of the car. Defendant Williams continued to demand Mr. Rowe's identification and instructed Mr. Rowe to get out of the car. Defendant Hunter continued to demand Mr. Rowe's identification and instructed Mr. Rowe to get out of the car, moving his hand over his firearm in a threatening manner, and Defendant Williams requested pepper spray. Defendants Hunter, Williams, and another Individual SPO Defendant then attempted to drag Mr. Rowe from the car by force, choking and assaulting Mr. Rowe in the process, all while his children watched from the back seat. Mr. Rowe, afraid for his life and the lives of his children, stepped out of the car.

Once out of the car, Defendants Hunter and Williams handcuffed Mr. Rowe behind his back. After Mr. Rowe was handcuffed, Defendant Hunter retrieved pepper spray and sprayed it directly in Mr. Rowe's face. Defendants Hunter and Williams took Mr. Rowe to the back of the car and attempted to search his pockets. Mr. Rowe stated that he did not consent to a search and moved his legs to prevent the search. Defendants Hunter and Williams threw Mr. Rowe against a wooden fence nearby and again attempted to search him. After Mr. Rowe continued not to consent and move his legs, Defendants Hunter, Williams, and two other Individual SPO Defendants slammed Mr. Rowe's body onto the ground. Defendant Williams then threatened and intimidated Mr. Rowe as the SPOs waited for officers from the District of Columbia Metropolitan Police Department ("MPD") to arrive.

The Individual SPO Defendants lacked the legal authority to stop, search, and arrest Mr. Rowe. In fact, notwithstanding that they were, or held themselves out as, commissioned and authorized by the D.C. government to exercise police powers, at the time of the incident, most of the Individual SPO Defendants lacked the authority to conduct themselves as SPOs because their

SPO licenses had either expired or been revoked by MPD.  Moreover, the Individual SPO Defendants' use of force against Mr. Rowe was excessive and unreasonable, constituting a callous indifference and a reckless disregard for Mr. Rowe's well-established rights under the Constitution and District of Columbia law.

Defendant PChange is liable for the actions of its employees as well as for its own negligent supervision of the Individual SPO Defendants, which contributed to the unlawful acts described herein.  Defendant PChange knew or should have known it was deploying, and in some cases arming, unlicensed SPOs to act under color of law on PChange's behalf.  Further, Defendant PChange knew or should have known that its SPOs had insufficient training on the scope of their authority and use of force, as demonstrated by repeated instances of misconduct and violations of law and policy.

Similarly, Defendant Vesta, which manages the Park Southern property, is liable for the actions of the SPOs under its direction, authority, and control as well as for its own negligent supervision of the Individual SPO Defendants.  Defendant Vesta knew or should have known about repeated instances of misconduct carried out by PChange SPOs at Park Southern and elsewhere; Defendant Vesta, responsible for the day-to-day management and control of the PChange SPOs, failed to properly supervise the PChange SPOs over whom it maintained control and failed to appropriately address such misconduct; and finally, Defendant Vesta, aware of Mr. Rowe's unlawful detainment as it was unfolding, failed to intervene.  Defendants Vesta Management DC, LLC, Vesta Corporation, Vesta Equity Corporation, Vesta Management Corporation, Vesta PSRC, LLC, and 800 Southern are all equally liable for the claims Mr. Rowe brings against Defendant Vesta because they share a unity of ownership and interest, and the interests of justice support disregarding the corporate form as to these entities.

This action seeks monetary and punitive damages to compensate Mr. Rowe for harm caused by these violations and to ensure that the SPOs at Park Southern, their employer PChange,

and the management company that also oversees the activities of the SPOs at Park Southern, Defendant Vesta, act within the limits of their authority and the law.

## JURISDICTION AND VENUE

1.      This court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims arise under the United States Constitution and federal statutes.

2.      This court has supplemental jurisdiction over Mr. Rowe's related claims asserted under the laws of the District of Columbia pursuant to 28 U.S.C. § 1367.

3.      Venue is proper in this court pursuant to 28 U.S.C. § 1391(b)(2) because this is where the Defendants are employed or registered to operate and because the events giving rise to the claims occurred in the District of Columbia.

## PARTIES

4.      Plaintiff Michael Rowe, now and at all times relevant to this complaint, is a resident of the District of Columbia.

5.      Defendant PChange is a Maryland entity with its principal office located at 8181 Professional Place, Suite 150, Hyattsville, MD, 20785.  Defendant PChange employs SPOs and contracts with private businesses to provide security services.  At the time of the incident at issue here, Defendant PChange employed the Individual SPO Defendants.

6.      With the exception of Defendant Vesta Management DC, LLC, each of the Vesta Entities is a Connecticut entity with its principal office located at 175 Powder Forest Drive, Weatogue, CT 06089.

7.      Defendant Vesta Management DC, LLC is a District of Columbia entity with its principal office located at 820 Southern Avenue SE, Washington, D.C. 20032.

8.      The Vesta Entities own and manage the apartment complex at 800 Southern Avenue, SE, Washington, DC 20032, also known as Park Southern ("Park Southern").

9.      At the time of the incident at issue here, Defendant Vesta managed and oversaw the relationship with Defendant PChange and had the power and authority to direct and control the PChange SPOs providing security services at Park Southern.

10.     Vesta Corporation was named as a defendant in the original complaint filed in this action on October 12, 2022.  Mr. Rowe substituted Vesta Management DC, LLC as the defendant based on Vesta's counsel's representation that Vesta Management DC, LLC was the "proper Vesta entity" for purposes of this litigation.

11.     Upon information and belief, Defendant Bryan Hunter was at all times relevant to this complaint an SPO and an employee of Defendant PChange.

12.     Upon information and belief, Defendant James Parker is now and was at all times relevant to this complaint an SPO and an employee of Defendant PChange.

13.     Upon information and belief, Defendant Damion Philson is now and was at all times relevant to this complaint an SPO and an employee of Defendant PChange.

14.     Upon information and belief, Defendant Stefan Williams is now and was at all times relevant to this complaint an SPO and an employee of Defendant PChange.

15.     Upon information and belief, Defendant Delonte Albany was at all times relevant to this complaint an SPO and an employee of Defendant PChange.

16.     Upon information and belief, Defendant Tyauna Perry was at all times relevant to this complaint an SPO and an employee of Defendant PChange.

17.     Upon information and belief, Defendant Shamar Phillips was at all times relevant to this complaint an SPO and an employee of Defendant PChange.

18.     Upon information and belief, Defendant Tyrell Arrington was at all times relevant to this complaint an SPO and an employee of Defendant PChange.

19.     Upon information and belief, Defendants John Doe 1-5 were at all times relevant to this complaint SPOs and employees of Defendant PChange.

## BACKGROUND ON THE VESTA ENTITIES

20.      The Vesta Entities share a unity of ownership and interest.  According to District of Columbia records, Arthur Greenblatt is listed as a beneficial owner and officer of each of the Vesta Entities; Aaron Greenblatt is listed as a beneficial owner and officer of five of the Vesta Entities; and Emily Magaw is listed as an additional beneficial owner of four of the Vesta Entities. Upon information and belief, at all relevant times relevant to this Complaint, Arthur Greenblatt has served as the president of Vesta Corporation, Emily Magaw has served as Asset Manager of Vesta Corporation, and Aaron Greenblatt has served as counsel of Vesta Corporation.  In addition, Vesta Management Corporation is listed as one of the beneficial owners of Vesta Management DC, LLC.  Moreover, the deed for Park Southern indicates that 800 Southern, owner of Park Southern, is owned by a series of corporate entities including Vesta Corporation, Vesta Equity Corporation, and Vesta PSRC, LLC.  On its website, www.vestacorp.com, Vesta Corporation bills itself as an owner, developer, and manager of multifamily residences.  Park Southern is listed on Vesta Corporation's website in a list of "Our Communities."

21.

22.      The Vesta Entities also maintain contractual arrangements with each other relating to the management of Park Southern.  Vesta Management DC, LLC and 800 Southern are parties to a management agreement dated August 18, 2017 (the "Management Agreement").  The Management Agreement designates Vesta Management DC, LLC as its "exclusive agent for the management of [Park Southern]."  The Management Agreement requires Vesta Management DC, LLC to submit a Management Plan providing "a comprehensive description of the policies and procedures to be followed in the management of [Park Southern]."  Arthur Greenblatt signed the Management Agreement on behalf of 800 Southern via Vesta PSRC LLC, as managing member of 800 Southern.  Vesta Management DC, LLC produced this Management Plan  in discovery.

The Management Plan is undated and indicates that it was prepared and submitted by Vesta Management Corporation.

23.     Public records show that Vesta Corporation has been a mortgagee for 800 Southern in connection with the purchase of Park Southern. The publicly available deeds of trust and trust subordination agreements associated with these loans also reflect that Arthur Greenblatt is the signatory on behalf of 800 Southern via Vesta PSRC LLC, as managing member of 800 Southern. Arthur Greenblatt is also the signatory on behalf of Vesta Corporation in the publicly available loan documents.

24.     The Vesta Entities also share a unity of interest as it relates to the arrangement for PChange to provide security services at Park Southern. Vesta Management DC, LLC produced a general services contract between PChange and 800 Southern to Mr. Rowe with its initial disclosures on March 31, 2023 (the "PChange Contract"). Mr. Rowe is not aware of any publicly available source to obtain the PChange Contract. The PChange Contract designates Vesta Management Corporation as the agent of 800 Southern for purposes of managing PChange and its SPOs assigned to Park Southern. The PChange Contract requires PChange to submit a certificate of liability insurance naming as additional insured the following Vesta Entities:  Vesta Management DC, LLC, Vesta Management Corporation, Vesta Corporation, Vesta PSRC, LLC, and 800 Southern. The PChange Contract was signed on behalf of 800 Southern by Aaron Greenblatt, whose title is counsel for 800 Southern. According to Vesta Corporation's website, Aaron Greenblatt also serves as counsel for Vesta Corporation.

25.     Pursuant to the PChange Contract, PChange is required to perform its work "to the satisfaction" of "Owners Agent," defined as Vesta Management Corporation. Vesta Management Corporation also has the authority to change, modify, or terminate the PChange contract at its discretion. In a submission by Vesta Management DC, LLC in this matter, counsel for Vesta Management DC, LLC and other Vesta Entities noted that the PChange Contract designates Vesta

(which counsel defined as Vesta Management DC, LLC) as 800 Southern's agent.  ECF No. 98 at 2.

## BACKGROUND ON SPECIAL POLICE OFFICERS AND SECURITY AGENCIES IN THE DISTRICT OF COLUMBIA

26.    SPOs are empowered by the District of Columbia, under D.C. Code § 23-582(a), with "the same powers as a law enforcement officer to arrest without warrant for offenses committed within premises to which his jurisdiction extends."

27.    SPOs are appointed by the Mayor, under D.C. Code § 5-129.02(a), to patrol a property of a corporation or individual.

28.    Applications for the appointment of SPOs, under D.C. Municipal Regulation ("D.C.M.R.") 6-A1105.1, are made jointly in the names of the prospective SPOs and the names of the persons or corporations in connection with whose property of business the appointment is sought.

29.    Although appointed by the Mayor, under D.C. Code § 5-129.02(a), SPOs are to be paid wholly by the corporation or person on whose account their appointments are made.

30.    SPOs must have and maintain a commission to act as special police officers under D.C. Code § 5–125.02(a).  This commission is bestowed by the District on individuals in the form of a license (the "SPO License").

31.    Agencies and employers that employ SPOs ("Security Agencies") are also required to maintain a license from the District to operate within the District of Columbia.

32.    Security Agencies have an affirmative duty to supervise SPOs in their employ. D.C.M.R. 6-A § 1106.2; 17 D.C.M.R. § 2126.1(k).

33.    SPOs in the District of Columbia do not have authority to issue notices of infractions, or tickets, for parking, moving, or non-moving violations.  18 D.C.M.R. §§ 3002, 3003.

34.     SPOs in the District of Columbia do not have the authority to compel an individual they have stopped to answer questions or produce identification for examination, and the refusal to answer questions or produce identification by itself does not establish probable cause to arrest. MPD General Orders-OPS-304.10 § II.B.4.c.

35.     SPOs in the District of Columbia may use only such force as is reasonably necessary under the circumstances.  MPD General Orders-OPS-304.10 § II.B.6.(a).

## FACTUAL ALLEGATIONS

### I.     The Incident on October 26, 2021

36.     On the afternoon of Tuesday, October 26, 2021, Mr. Rowe drove his mother, sister, and three children to the Park Southern apartments, where Mr. Rowe's mother and sister live.  Mr. Rowe frequently visits Park Southern because he helps his mother and sister with errands, relies on his mother and sister to assist in caring for his children, and frequently borrows his mother's car.

37.     Once he arrived at Park Southern, Mr. Rowe entered the parking garage and dropped his mother and sister off near an entrance to the apartment complex.  Mr. Rowe then began to drive toward the parking garage exit, with his three children—then aged 1, 5, and 8—still in the car.

38.     As Mr. Rowe drove toward the parking garage exit, he found it blocked by the Individual SPO Defendants, who were standing in the driveway, as well as by an SPO security vehicle and by another vehicle.

39.     The Individual SPO Defendants were in their SPO uniforms and at least some had firearms, including Defendant Hunter.

40.     Mr. Rowe lightly honked his horn at the SPOs to indicate that he was attempting to exit the parking garage and needed them to move out of the way.  The SPOs did not move, and Mr. Rowe honked his horn again.  At this point, the SPOs moved over slightly, though still partially

blocking the exit, and Mr. Rowe began to slowly drive forward in an attempt to maneuver his car around the group to exit the garage.

41.     As Mr. Rowe drove past the group of SPOs and exited the parking garage, he shouted at the group out of frustration with their behavior.  Defendant Williams yelled back at Mr. Rowe and Defendants Williams and Hunter approached the driver's side door of Mr. Rowe's car, while other Individual SPO Defendants approached the back of the car.

42.     Defendant Williams demanded Mr. Rowe's identification and Mr. Rowe pulled over his car just outside the parking garage.  Mr. Rowe replied that he did not have to produce identification and told Defendant Williams that if he needed to see identification, Defendant Williams should call the police.  Defendant Williams replied, "I am the police."

43.     During this exchange, Defendant Hunter placed his hand on his firearm, and Defendant Williams asked Defendant Hunter to retrieve pepper spray.

44.     Mr. Rowe asked Defendant Hunter "are you going to shoot me for not giving you ID?"  Defendant Hunter responded "If I have to."

45.     Mr. Rowe asked Defendant Williams if he was going to use pepper spray against Mr. Rowe while he was still inside the car with his children.  Defendant Williams responded that Mr. Rowe was under arrest.

46.     Defendant Williams began to pull on Mr. Rowe's driver's side door handle in an attempt to force open the door.  Mr. Rowe shifted the car into park and unlocked the door to prevent Defendant Williams from breaking off the door handle.  Defendant Williams opened the door as Mr. Rowe attempted to turn the car off.

47.      Defendant Williams reached into the car and grabbed the key from the ignition, breaking it in the process.

48.     Defendants Hunter and Williams and a third Individual SPO Defendant then reached into the car and grabbed Mr. Rowe, attempting to pull him out of the car by force. However, Mr. Rowe was still buckled into his seatbelt.

49.     While attempting to pull Mr. Rowe from the car, Defendants Williams and Hunter grabbed Mr. Rowe's dreadlocks, ripped his clothing, and, at one point, grabbed Mr. Rowe by the throat, causing him to choke.

50.     While Mr. Rowe was still in the car, Defendant Williams attempted to handcuff Mr. Rowe behind his back and placed his left hand into the handcuffs.

51.     As this was happening, Mr. Rowe's three young children were in the back of the car, screaming.

52.     Given the presence of a firearm and pepper spray, Mr. Rowe feared not only for his safety, but also for the safety of his children.  Mr. Rowe therefore managed to unbuckle his seatbelt and get out of the car.

53.     Defendants Hunter and Williams then wrenched Mr. Rowe's right arm behind his back, and into the handcuffs.  Defendants Hunter and Williams then turned Mr. Rowe around so his back faced the car with his hands both handcuffed behind his back.  The handcuffs were secured too tightly, causing Mr. Rowe's wrists and hands to go numb.

54.     Mr. Rowe observed the other SPOs, including the other Individual SPO Defendants, laughing while watching this scene.

55.     Defendants Hunter and Williams tried to communicate with Mr. Rowe, but Mr. Rowe refused and continued to request that MPD be called.  Defendant Williams then walked away from Defendant Hunter and Mr. Rowe to retrieve pepper spray.

56.     Defendant Williams returned to Defendant Hunter and Mr. Rowe and said words to the effect of, "He don't want to talk.  Let's mace him."

57.     Defendant Hunter pressed the can of pepper spray against Mr. Rowe's face while Mr. Rowe was handcuffed behind his back and sprayed the pepper spray directly into Mr. Rowe's face.

58.     Mr. Rowe became disoriented and the pepper spray immediately caused Mr. Rowe's eyes to burn and caused both his eyes and nose to run uncontrollably.

59.     Defendants Hunter and Williams pulled Mr. Rowe around toward the back of the car and began searching his pockets.  Mr. Rowe told them he did not consent to a search and tensed and moved his legs to prevent the search.

60.     In response, Defendants Hunter and Williams lifted Mr. Rowe and slammed him into a wooden fence.  Mr. Rowe, still standing, but disoriented from the pepper spray, continued to tense and move his legs as Defendants Hunter, Williams, and other Individual SPO Defendants tried to search his pockets.

61.     Defendant Williams yelled words to the effect of "ground him," and two other Individual SPO Defendants joined Defendants Williams and Hunter to grab Mr. Rowe's legs and upper body.

62.     Mr. Rowe tried to lean forward in an attempt to protect himself and prevent the SPOs from turning him over and slamming him on to his head or neck.  However, Defendants Williams and Hunter and two other Individual SPO Defendants lifted Mr. Rowe into the air and slammed him onto the ground on his back.

63.     After being thrown to the ground, the SPOs eventually allowed Mr. Rowe to sit up.  Mr. Rowe remained seated on the ground in handcuffs and with his back against the car, until officers from the MPD arrived.

64.     While waiting for MPD, Mr. Rowe asked the Individual SPO Defendants if he could call his mother to get his children.  In response, Defendant Williams threatened to put Mr. Rowe and his three young children, who were still seated in the back seat of the car, "into the

system." Defendant Williams told Mr. Rowe he would never see his kids again. Defendant Williams also threatened to bar Mr. Rowe from the property.

65.     Another resident of the Park Southern apartment complex saw Mr. Rowe on the ground, and Mr. Rowe asked her to inform his mother about the incident, which she did. Mr. Rowe's mother went to the parking garage and saw Mr. Rowe handcuffed on the ground. Mr. Rowe's shirt was ripped, he was visibly distraught from the pepper spray, and he was complaining that his hands hurt because the handcuffs were too tight.

66.     Mr. Rowe's mother became extremely concerned by Mr. Rowe's condition and complaints regarding the undue tightness of the handcuffs and the Individual SPO Defendants' lack of concern for Mr. Rowe's condition.

67.     Mr. Rowe's mother went back into the apartment building to seek the assistance of the Defendant Vesta property management staff. Once Mr. Rowe's mother was in the management staff's office, however, she observed that the staff appeared to already be aware of what had happened.

68.     On information and belief, the Defendant Vesta property management staff had access to cameras with views both inside and outside the garage where the incident occurred.

69.     When Mr. Rowe's mother requested the Defendant Vesta property management staff's assistance, the property manager, Nichole Kindred, was hesitant to leave the office and dismissive of Mr. Rowe's mother's concerns.

70.      As Mr. Rowe's mother continued to request that the Defendant Vesta property manager go outside to assist Mr. Rowe, the property manager said words to the effect of "there's nothing I can do if the police have been called."

71.     Eventually, the Defendant Vesta property manager accompanied Mr. Rowe's mother to the parking garage, but only after Mr. Rowe's mother demanded that the Defendant Vesta property manager come outside.

72.     The Defendant Vesta property manager spoke with the Individual SPO Defendants and asked whether MPD had been called.

73.     As this was happening, Mr. Rowe was still visibly distraught from the pepper spray and violent attack, and complaining to the Individual SPO Defendants that the handcuffs were too tight.

74.     At no time did the Individual SPO Defendants loosen the handcuffs, despite Mr. Rowe's repeated complaints.

75.     The Individual SPO Defendants confirmed that MPD had been called.   The Defendant Vesta property manager then told Mr. Rowe's mother that the Individual SPO Defendants were exercising their policing rights and there was nothing she could do.   The Defendant Vesta property manager also stated that some of the Individual SPO Defendants were tenants of Park Southern, and then left the parking garage.

76.     During this time, Mr. Rowe's mother took Mr. Rowe's children out of the car, and then waited with Mr. Rowe and the Individual SPO Defendants for MPD to arrive.

77.     Throughout this incident, the Individual SPO Defendants either participated in intimidating, threatening, and physically attacking Mr. Rowe or witnessed their fellow SPOs intimidate, threaten, and physically attack Mr. Rowe and failed to intervene or otherwise protect Mr. Rowe.

78.     At approximately 4:00 PM, two MPD officers responded to the scene at Park Southern.   The MPD officers spoke with Mr. Rowe and the Individual SPO Defendants about the incident.

79.     The Individual SPO Defendants admitted to the MPD officers that at least three SPOs attempted to physically pull Mr. Rowe from the car and that one SPO later deployed pepper spray to Mr. Rowe's face.

16

80.     The Individual SPO Defendants told Mr. Rowe that he was being barred from the property and would not be permitted back for five years.

81.     Mr. Rowe was in a great deal of pain due to, among other things, the way the SPOs had tightly fastened the handcuffs.  One of the MPD Officers removed the original set of handcuffs and replaced them with MPD handcuffs.  During this time, Mr. Rowe provided the officers his account of how the Individual SPO Defendants wrongfully stopped, arrested, and searched him.

82.     MPD Officers determined that there was no probable cause established to arrest Mr. Rowe.  The MPD Officers informed Mr. Rowe that he would not be arrested, released him from the handcuffs, and returned the possessions that the Individual SPO Defendants had seized.

83.     The MPD officers had called senior MPD officials to the scene and invited Mr. Rowe to wait and speak with the MPD officials.

84.     When two senior MPD officials arrived, they spoke with the Individual SPO Defendants and Mr. Rowe about the incident.

85.     One of the senior MPD officials told the Individual SPO Defendants that they did not have the authority to make traffic stops, even on the property to which they are assigned.  The MPD official further said that, even if the SPOs did have such authority, Mr. Rowe's alleged rolling towards them in his car was not a sufficient basis for a traffic stop or arrest.

86.     The MPD official advised the Individual SPO Defendants that if an individual refused to provide their identification, it was fine, and that the SPOs should instead note a description of the individual.  The MPD official further advised the Individual SPO Defendants that SPOs are only allowed to use physical force to defend themselves or others.

87.     SPOs in the District of Columbia do not have authority to issue notices of infractions, or tickets, for parking, moving, or non-moving violations under D.C.M.R. Title 18 § 3002 and § 3003.

88.    SPOs in the District of Columbia do not have the authority to compel an individual that they have stopped to answer questions or produce identification for examination, and the refusal to answer questions or produce identification by itself does not establish probable cause to arrest.  MPD General Orders-OPS-304.10 § II.B.4.c.

89.    SPOs in the District of Columbia may use only such force as is reasonably necessary.  MPD General Orders-OPS-304.10 § II.B.6.(a).

90.    SPOs in the District of Columbia shall not use or threaten to use force (1) to "punish a person or retaliate against a person for past conduct" or (2) to "force compliance with a member's request, unless that request is necessary to preserve member or public safety or criminal adjudication."  MPD General Orders-RAR-901.07 § II.A.2.

91.    The MPD official also told the Individual SPO Defendants they could not bar Mr. Rowe from the property because of this incident as they had no basis to do so.

92.    Sometime after MPD arrived, a PChange supervisor also came to the scene and spoke with some of the SPOs, the Vesta property management staff, and the MPD officers.

93.    Several Individual SPO Defendants, including Defendants Williams and Hunter, provided their SPO licenses to MPD.  At no point did Defendants Williams and Hunter inform the MPD officers that their SPO licenses were in revoked status.

94.    Defendant Philson and another PChange SPO were wearing body-worn cameras ("BWCs").  Defendant Philson and this other PChange SPO both told the MPD officers that their BWCs were on and recording.

95.    Mr. Rowe and his mother waited several hours for AAA to arrive to replace the key to the car, which was broken as a result of the incident.

## II.    Mr. Rowe Suffered Physical and Emotional Harm as a Result of the Incident

96.    As a result of this incident, Mr. Rowe required medical attention for pain in his wrist, neck, back, and leg.  A doctor prescribed Mr. Rowe a muscle relaxer, and he missed work

due to his injuries.  Mr. Rowe experienced severe numbness in his hands and pain in his wrist for over a month and a half, and he continues to experience tension in his hands.  For three days after the incident, Mr. Rowe experienced burning in his face as a result of the use of the pepper spray.

97.    Even after Mr. Rowe returned to his job, his injuries impaired his performance at work—loading and delivering packages—because the pain of his injuries decreased the efficiency with which Mr. Rowe was able to work.

98.    Because of this incident involving the Individual SPO Defendants, Mr. Rowe becomes physically and emotionally tense and anxious every time he sees SPOs at Park Southern, and often elsewhere.  Mr. Rowe knows that he could have died that day, given the excessive force used against him and the presence of a firearm.

99.    Mr. Rowe has no criminal record and has never had a physical interaction with any police officers or security personnel prior to this incident.  However, because of this incident, interacting with SPOs has become intimidating for Mr. Rowe.

100.    The tension and anxiety Mr. Rowe experiences when near SPOs is even worse when he is with his children because of the fear he felt for them during the incident, the humiliation he suffered in front of them, and because of the anxiety they developed when visiting their grandmother's residence at Park Southern as a result of the incident.  Mr. Rowe fears that another incident will happen every time he is with his children at Park Southern.

III.    **Defendant PChange Exhibits a Custom and/or Practice of Unconstitutional Behavior, Negligent Supervision, and Failure to Train its SPOs**

a.    *PChange Has A Duty To Supervise Its SPOs*

101.    As a Security Agency licensed by the District of Columbia, Defendant PChange has an affirmative duty to supervise SPOs in its employ in the course of their employment.  See D.C.M.R. 6-A § 1106.2.

102. The failure to properly supervise the activities of its employees is grounds for the denial or suspension of a Security Agency's license by the District of Columbia. See 17 D.C.M.R. § 2101.4.

103. As a Security Agency licensed by the District of Columbia, Defendant PChange has a duty to "make its own determination of an applicant's suitability for employment as a special police officer." See D.C.M.R. 6-A § 1106.1.

104. As part of its duties to supervise and determine suitability of its SPOs, Defendant PChange is responsible for ensuring its SPOs are effectively licensed to operate as SPOs in the District of Columbia.

105. As part of its duties to supervise and determine suitability of its SPOs, Defendant PChange is responsible for ensuring its SPOs receive, at a minimum, the training required of SPOs by the District of Columbia.

106. As part of its duties to supervise its SPOs, Defendant PChange is responsible for ensuring that the SPOs to whom Defendant PChange issues a firearm are properly licensed (i) as SPOs and (ii) to carry a firearm in the District of Columbia.

107. As part of its duties to supervise its SPOs, Defendant PChange issues standard operating procedures that govern the conduct of its SPOs.

108. As part of its duties to supervise its SPOs, Defendant PChange is responsible for documenting violations of law or policy by its SPOs and reporting certain violations to MPD. Defendant PChange is also responsible for determining and undertaking appropriate action in response to such violations, including disciplinary actions and further training.

   b. *Defendant PChange Failed To Adequately Supervise the Individual SPO Defendants By Deploying And Arming Unlicensed SPOs.*

109. At the time of the incident, Defendant Williams' SPO license in the District of Columbia had been revoked.

110.    At the time of the incident, Defendant Hunter's SPO license in the District of Columbia had been revoked.

111.    At the time of the incident, Defendant Arrington's SPO license in the District of Columbia had been revoked.

112.    At the time of the incident, Defendant Parker's SPO license in the District of Columbia was in expired status.

113.    At the time of the incident, Defendant Philson's SPO license in the District of Columbia was in expired status.

114.    At the time of the incident, Defendant Phillips did not yet have an effective SPO license in the District of Columbia.

115.    Despite the lack of an effective SPO license, during the incident, each of Defendants Williams, Hunter, Parker, Philson, and Phillips held themselves out as SPOs employed by Defendant PChange and as properly commissioned and authorized by the D.C. government to exercise police powers.  They wore PChange-issued uniforms and badges; they were posted by Defendant PChange to the Park Southern property; they were equipped with pepper spray; and multiple of the Individual SPO Defendants had a firearm.

116.    The D.C. Department of Licensing and Consumer Protection ("DLCP"), which oversees the administration of SPO licenses in the District of Columbia, in the ordinary course sends notices to Security Agencies, like Defendant PChange, of expired, revoked, or otherwise ineffective SPO licenses for SPO employees.  DLCP also communicates renewal notices to security agencies like Defendant PChange about the upcoming expiration of SPO licenses.

117.    The SPO licenses of Parker and Philson were in expired status because their applications to renew their licenses were incomplete by the September 30, 2021 cutoff date for renewal, as extended for the COVID-19 emergency.

21

118.    During a deposition obtained through discovery, a representative of the District of Columbia testified that DLCP sent letters to all security agencies informing them of any SPO licensees' status that had changed to an expired status because their license applications were incomplete as of the cutoff date.

119.    The same witness for the District of Columbia testified that DLCP would have communicated with Defendant PChange via email about the revocation of the SPO licenses of Defendants Williams, Hunter, and Arrington as soon as MPD notified DLCP that the licenses were revoked.

120.    At the time of the incident, Defendant PChange knew or should have known that the SPO licenses of Defendants Williams, Hunter, and Arrington had been revoked.

121.    At the time of the incident, Defendant PChange knew or should have known that the SPO licenses of Defendants Parker, Philson, and Phillips were not effective.

122.    Nevertheless, Defendant PChange deployed Defendant SPOs Williams, Hunter, Arrington, Parker, Philson, and Phillips to patrol the Park Southern property on the date of the incident.

123.    Further, Defendant PChange permitted Defendants Hunter and Williams, who had revoked SPO licenses, to carry firearms in the course of their duties.  Defendant Hunter was given pepper spray, by another SPO at the scene, which he sprayed directly into Mr. Rowe's face while Mr. Rowe was handcuffed.

124.    Defendant PChange also permitted Defendant Philson, whose SPO license was expired, to carry a firearm in the course of his duties.

125.    Despite having notice of the status of its SPOs' licenses, defendant PChange negligently and/or recklessly failed to adequately supervise its SPOs by failing to ensure the SPOs it deployed held or maintained valid and effective SPO licenses and by arming unlicensed SPOs with firearms.

126.    PChange's failure to adequately supervise its SPOs proximately caused the harm to Mr. Rowe because it should have foreseen that deploying unlicensed SPOs to provide armed security services would result in potentially dangerous outcomes, including that those SPOs would engage in unlawful stops, arrests, searches, and use of force.

c.    *Defendant PChange Failed to Adequately Supervise Defendant SPOs By Failing To Ensure Defendant SPOs Had Sufficient Training.*

127.    Defendant PChange is responsible for ensuring its SPOs are adequately trained on, among other things, legality of stops, seizures, searches, and use of force.

128.    The stop, seizure, search, and use of force against Mr. Rowe was unlawful under the U.S. Constitution, D.C. law, and MPD General Orders.

129.    On October 26, 2021, after MPD arrived at the scene of the incident, MPD spent over an hour informing the Individual SPO Defendants about the proper authority of SPOs, including the appropriate bases for a stop, seizure, search, and use of force.

130.    The inadequacy of Defendant PChange's training of its SPOs is demonstrated by the fact that the Defendant SPOs (i) unlawfully stopped Mr. Rowe purportedly for a traffic violation, which they had no authority to enforce; (ii) arrested Mr. Rowe for failure to produce identification when they had no authority to demand it; and (iii) proceeded to unlawfully search Mr. Rowe and use excessive force against him, all in violation of Mr. Rowe's constitutional rights.

131.    Defendant PChange's failure to adequately train the Defendant SPOs constituted negligence and/or recklessness.

132.    Defendant PChange's failure to adequately train the Defendant SPOs proximately caused the harm to Mr. Rowe because it should have foreseen that deploying inadequately trained SPOs to provide armed security services would result in potentially dangerous outcomes, including that those SPOs would engage in unlawful stops, arrests, searches, and use of force.

d.    *Defendant PChange Exhibits a Pattern or Practice of Failing to Adequately Supervise Its SPO Employees, including the Individual SPO Defendants, By*

*Repeatedly Failing to Ensure SPOs Are Effectively Licensed and Adequately Trained, and By Failing to Address Misconduct.*

133.    On September 3, 2020, Defendant Arrington negligently discharged his firearm in the breakroom of a residential apartment building while on duty for Defendant PChange. Defendants Hunter, Williams, and several other PChange SPOs were present during this negligent firearm discharge.  This incident occurred at 820 Southern Avenue SE, Washington, D.C. 20032 ("Village Chesapeake"), which is next door to Park Southern and is also a property managed by Vesta and owned by several of the Vesta Entities.

134.    On September 29, 2021, as a result of the September 3, 2020 incident, MPD issued a notice of revocation of PChange's Security Agency license.  MPD found that PChange's "failure to adequately train and supervise the employees of [PChange's] security agency created a substantial public safety risk."  MPD further found that PChange and its SPOs "intentionally covered up the negligent discharge of a firearm."  MPD also found that Defendants Hunter and Williams had been intentionally untruthful with MPD officers about the negligent discharge.  MPD also found that Defendants Arrington, Hunter, Parker, and Williams failed to notify MPD of the use-of-force incident, despite being required to do so.  MPD revoked the SPO licenses of both Defendants Hunter and Williams as a result of the findings of this investigation.

135.    Nonetheless, on information and belief, following the September 3, 2020 incident, Defendant PChange failed to adequately train its SPOs in connection with firearms, searches and seizures, and the use of force.

136.    Following the September 29, 2021 notice of revocation, Defendant PChange also continued to deploy Defendants Arrington, Hunter, Parker and Williams as SPOs despite their misconduct and, in the case of Defendants Arrington, Hunter, and Williams, their revoked licenses.

137.    On September 26, 2021, an on-duty PChange SPO unlawfully struck a handcuffed, seated, intoxicated individual across the face, while in the presence of other PChange SPOs.  At

the time of the incident on September 26, 2021, the licenses of two of the PChange SPOs involved, including the SPO who struck the handcuffed victim, were in expired status.  On May 24, 2022, as a result of this September 26, 2021 incident, MPD issued a second notice of revocation of PChange's Security Agency license for PChange's failure to make a timely report of a serious use of force by a PChange SPO.

138.    Following the September 26, 2021 incident, Defendant PChange failed to ensure all of its on-duty SPOs maintained valid and effective SPO licenses.  Further, following the September 26, 2021 incident, Defendant PChange failed to adequately ensure its SPOs received proper training on firearms, searches and seizures, and the use of force.  Defendant Williams also engaged in at least two other instances of improper use of force while employed by PChange.

139.    On June 21, 2022, Defendant Williams was serving as a "Safety Ambassador" for PChange.  Defendant Williams was not licensed as an SPO at this time and did not have authority to carry out the duties of an SPO, including conducting stops or arrests, or using force to do so.  Notwithstanding, while acting in a security role on June 21, 2022, Defendant Williams used force against a citizen who crossed a police line by shoving that citizen back.

140.    According to an email from MPD to DLCP dated March 13, 2023, Defendant Williams engaged in a separate incident in which he fired two rounds from his service weapon into the scene of an attempted carjacking.  This incident did not take place on a property that PChange or Defendant Williams was patrolling.  While an SPO whose license is revoked may be able to renew his SPO license after completing training or taking other steps prescribed by MPD, as a result of this incident, MPD requested that DLCP change the status of Defendant Williams' SPO license, as well as the status of another PChange SPO, from revoked to "indefinitely revoked."  As a result, Defendant Williams has been foreclosed indefinitely from renewing his SPO license.

141.    Despite repeated misconduct by Defendant Williams and notwithstanding the fact that Defendant Williams did not have a valid and effective SPO license, Defendant PChange continued to deploy Defendant Williams as an SPO and in other security roles.

142.    These repeated instances of PChange SPOs using excessive force, using force without lawful authority, improperly discharging firearms, and failing to report such uses of force and other misconduct, demonstrate a pattern of serious misconduct by PChange SPOs.

143.    In fact, as recently as September 3, 2023, Mr. Rowe observed PChange SPOs beating up a hand-cuffed man at an apartment building near Park Southern.

144.    PChange has faced at least two lawsuits for the violence and unconstitutional actions of its SPOs:  Complaint, *Henry Rivers v. PChange, LLC et al.*, 2017-CA-0008082-B (D.C. Super. Ct. Dec. 6, 2017) ("*Rivers* Complaint"); Complaint, *Sean Robinson et al. v. Brandon Hardy et al.*, No. 19-cv-03070 (D.D.C. Oct. 15, 2019) ("*Robinson* Complaint").

145.    According to the *Rivers* Complaint, in 2017, PChange was contracted to provide security to Brookland Manor housing complex in Northeast Washington, D.C.  Two PChange SPOs accused a man walking near, but not on Brooklyn Manor property, of carrying an alcoholic beverage.  The SPOs then started an altercation with the man and assaulted him so badly that he had to be taken to the hospital.  The SPOs were wearing BWCs, but PChange deleted the footage. *See Rivers* Complaint at *3-4.

146.    According to the *Robinson* Complaint, in 2019, two PChange SPOs assigned to Brookland Manor mistakenly believed that a particular resident had a barring noticed issued against him.  The SPOs barged into the resident's apartment, dragged the man out, used pepper spray against him, and assaulted him, after which the man was taken to the hospital.  MPD officers arriving on the scene told the PChange employees that their warrantless entry into the resident's apartment had been unlawful.  *See Robinson Complaint* at *6-11.

147.    This overall pattern of SPO misconduct is the result of (i) Defendant PChange repeatedly deploying and arming unlicensed employees to serve as SPOs; (ii) Defendant PChange failing to adequately supervise the SPOs it deploys to provide armed security services throughout the District of Columbia, including at Park Southern; (iii) Defendant PChange failing to ensure its SPOs are properly and adequately trained on how to lawfully carry out their SPO duties, including in connection with firearms, searches and seizures, and the use of force; (iv) Defendant PChange failing to take appropriate disciplinary action in response to such misconduct; and (v) a custom and practice of unlawful arrests, excessive force, firearm discharges, and other misconduct.

148.    This pattern of SPO misconduct put Defendant PChange on notice of the dangerous and/or incompetent behavior of its SPOs that led to the harm Mr. Rowe suffered.

149.    In light of this pattern of misconduct, Defendant PChange had notice that it was required to train its SPOs and that its SPOs were in need of training and/or supervision in order to safely and constitutionally fulfill their job responsibilities.

150.    In light of this pattern of misconduct, Defendant PChange had notice that it needed to take steps to ensure that its SPOs were not acting without valid and effective SPO licenses.

## IV.    Defendant Vesta Negligently Supervised PChange and the Individual SPO Defendants

151.    Defendant Vesta, now and at all times relevant to the Second Amended Complaint, manages the Park Southern apartment complex.

152.    Defendant Vesta, now and at all times relevant to the Second Amended Complaint, manages the PChange Contract.

153.    Pursuant to the terms of the PChange Contract and in actual practice, Defendant Vesta, now and at all times relevant to the Second Amended Complaint, actively directs, supervises, and oversees the conduct of the PChange SPOs assigned to the Park Southern property.

27

154.    Defendant Vesta approves the PChange Post Orders that govern SPO conduct at Park Southern.

155.    Defendant Vesta determines the locations on the property where PChange SPOs are to patrol and directs PChange SPOs to address security issues and incidents as they arise.

156.    Defendant Vesta directs the PChange SPOs to identify and investigate potential lease infractions, to report infractions to Defendant Vesta, and to deliver lease infraction notices to residents in the building.

157.    Defendant Vesta directs the PChange SPOs to identify and report individuals they believe should be barred from the property, as well as to inform such individuals when they are barred.

158.    Defendant Vesta directs the PChange SPOs to refrain from certain conduct while at Park Southern, including from loitering in groups on the property.

159.    In addition, Defendant PChange reports to Defendant Vesta on a daily basis regarding its duties at Park Southern via "Daily Activity Reports," which are forms that include notes from the SPOs' patrols of entry and exit points to Park Southern and from any notable activity on the property, including the arrival or departure of emergency vehicles.

160.    Communications between Vesta and PChange obtained through discovery demonstrate the control and authority that Vesta personnel maintained over PChange.   In particular, the communications show that, in July 2021, Vesta property manager Nichole Kindred met with Defendant Williams to discuss issues related to PChange SPOs' conduct and security services at Park Southern, including:

   a.    Removal of a specific PChange SPO "due [to] disorderly conduct to the property,"

   b.    Prohibiting SPOs from "passing out literature," improving "[p]atrolling of floors,"

     c.   Providing Defendant PChange a "[l]ist of officers that the board has banned from working Vesta properties" to "help Pchange stay in compliance with the board and Vesta management,"

     d.   Describing policies and procedures for PChange SPOs to ticket and tow improperly parked vehicles on the property,

     e.   Prohibiting "[o]fficers loitering in the roundabout on and off duty,"

     f.   Requesting that PChange provide "[n]ew post orders,"

     g.   Providing Ms. Kindred "reports in a timely manner," and

     h.   Including professional photos of PChange SPOs on a "GroupMe feed . . . so that [Ms. Kindred] can recognize each officer."

161.    Defendant Vesta has prohibited certain PChange SPOs from being stationed at Park Southern and other Vesta properties as a result of complaints received from residents and other concerns, to the point where Defendant PChange asked Vesta to compile a list of its SPOs who were "banned from working Vesta properties."  However, Defendant Vesta failed to enforce this prohibition as to at least one PChange SPO, and banned SPOs have been permitted to enter the property as SPOs or as "Safety Ambassadors" for PChange.  On the date of the incident involving Mr. Rowe, at least one previously banned PChange SPO, known as "Rambo," was present at Park Southern.

162.    Prior to the incident, Defendant Vesta directed PChange SPOs not to loiter in groups on the Park Southern property, yet Defendant Vesta failed to disperse the group of Individual SPO Defendants loitering in and around the parking garage prior to and at the time of the incident involving Mr. Rowe.

163.    Prior to the incident, Defendant Vesta was aware, or should have been aware, that Defendant Arrington negligently discharged his firearm at Village Chesapeake, a Vesta managed property next door to Park Southern, on September 3, 2020, and that Defendants Hunter, Williams,

and several other PChange SPOs were present during this negligent firearm discharge.  Further, Defendant Vesta was aware, or should have been aware, that MPD found that PChange and its SPOs "intentionally covered up the negligent discharge of a firearm," that Defendants Hunter and Williams had been intentionally untruthful with MPD officers about the negligent discharge, and that Defendants Arrington, Hunter, Parker, and Williams failed to notify MPD of the use-of-force incident, despite being required to do so.  Additionally, Defendant Vesta was aware, or should have been aware, that as a result of the findings of that investigation, MPD revoked the SPO licenses of both Defendants Hunter and Williams.  Much of the MPD investigation is based on its interview of a Vesta employee who witnessed the negligent discharge through a video monitor.

164.    Prior to the incident, Defendant Vesta was aware, or should have been aware, that Defendants Arrington, Hunter, and Williams did not have valid SPO licenses.  Defendant Vesta failed to adequately supervise PChange and the Defendant SPOs by allowing armed, unlicensed SPOs to provide security for Park Southern, and by failing to remove these unlicensed SPO Defendants from SPO duty, on the date of the incident.

165.    On information and belief, Defendant Vesta's employees at Park Southern were aware of the attack on Mr. Rowe as it unfolded, yet did nothing to intervene.

166.    Based on the incidents described above, as well as complaints raised by Park Southern residents and other concerns Defendant Vesta knew or should have known of prior to the incident involving Mr. Rowe, Defendant Vesta was on notice of PChange SPOs' dangerous or incompetent conduct.

167.    Defendant Vesta's failure to adequately supervise the Individual SPO Defendants and other PChange SPOs before and during the incident involving Mr. Rowe constituted negligence and/or recklessness.

168.    Defendant Vesta's negligent supervision proximately caused the harm Mr. Rowe suffered.

<u>COUNT ONE: VIOLATION OF THE FOURTH AMENDMENT – UNLAWFUL
SEIZURE</u>
**Against the Individual SPO Defendants and Defendant PChange LLC**

169.    Mr. Rowe repeats and incorporates by reference each allegation contained in the preceding paragraphs as if fully set forth herein.

170.    Mr. Rowe asserts this count under 42 U.S.C. § 1983 against all Individual SPO Defendants.

171.    Mr. Rowe asserts this count against Defendant PChange.

172.    The Individual SPO Defendants were at all times relevant to the actions alleged herein, state actors and persons acting under color of state law within the meaning of Section 1983 because they were, or held themselves out as, commissioned and authorized by the D.C. government to exercise police powers.

173.    When the Individual SPO Defendants, in uniform, and some of whom were armed, approached Mr. Rowe's car, assaulted him, attempted to physically drag Mr. Rowe out of his car, and placed him in handcuffs, they seized Mr. Rowe under the color of law.  The Individual SPO Defendants had no legal, articulable basis to suspect that Mr. Rowe had committed, was committing, or was about to commit any crime, but rather seized Mr. Rowe in response to Mr. Rowe yelling at them after they continued to block the exit of the parking garage.

174.    As a result of the seizure, Mr. Rowe suffered from pain in his wrists, neck, back, and legs, and his face burned for several days from the pepper spray.  Additionally, because Individual SPO Defendants placed the handcuffs too tightly on Mr. Rowe, he experienced severe numbness in his hands and pain in his wrist for over a month and a half.  Mr. Rowe continues to experience tension in his hands.

175.    Mr. Rowe also incurred costs from the medical attention he sought and lost wages from missing work.

176.    The Individual SPO Defendants' conduct occurred under color of law and constituted callous indifference and reckless disregard for Mr. Rowe's rights under the Fourth Amendment.

177.    Defendant PChange was at all times relevant to the actions alleged herein, a state actor and person acting under color of state law within the meaning of § 1983 because it directed, and had the authority to direct, persons acting under color of state law.

178.    Defendant PChange engaged in a  custom of false arrests in that PChange had actual notice of a pattern of unlawful arrests by its employees.

179.    Defendant PChange was negligent and/or deliberately indifferent in its failure to adequately supervise and/or discipline its SPOs, including the Defendant SPOs, by repeatedly failing to ensure that its SPOs were properly licensed; failing to ensure that its SPOs were properly and adequately trained on how to lawfully carry out their SPO duties, including in connection with firearms, searches and seizures, and the use of force; failing to take appropriate disciplinary action in response to SPO misconduct; and by allowing a custom and practice of unlawful arrests, excessive force, firearm discharges, and other misconduct.

180.    In the alternative, Defendant PChange recklessly disregarded the need to adequately supervise and/or discipline its SPO employees, including the Defendant SPOs, by repeatedly failing to ensure that its SPOs were properly licensed, failing to ensure that its SPOs were properly trained, and failing to discipline SPO misconduct.

181.    The actions of the Individual SPO Defendants and Defendant PChange are the direct cause of the injuries described above.  Mr. Rowe is entitled to general, special, and punitive damages.

## COUNT TWO: FAILURE TO INTERVENE REGARDING VIOLATIONS OF FOURTH AMENDMENT – UNREASONABLE SEIZURE
**In the Alternative to Count One Against Defendants James Parker, Damion Philson, Delonte Albany, Tyauna Perry, Shamar Phillips, Tyrell Arrington, and John Does 1-5**

182.    Mr. Rowe repeats and incorporates by reference each allegation contained in the preceding paragraphs as if fully set forth herein.

183.    Mr. Rowe asserts this count under 42 U.S.C. § 1983 in the alternative to Count One against Defendants Parker, Philson, Albany, Perry, Phillips, Arrington, and John Does 1-5.

184.    Defendants Parker, Philson, Albany, Perry, Phillips, Arrington, and John Does 1-5 were at all times relevant to the actions alleged herein, state actors and persons acting under color of state law within the meaning of Section 1983 because they were, or held themselves out as, commissioned and authorized by the D.C. government to exercise police powers.

185.    Defendants Parker, Philson, Albany, Perry, Phillips, Arrington, and John Does 1-5 were at all times present, in uniform, and at least some of whom were armed, while Mr. Rowe was unlawfully stopped and seized.

186.    To the extent Defendants Parker, Philson, Albany, Perry, Phillips, Arrington, and John Does 1-5 did not participate in the unlawful seizure of Mr. Rowe, they witnessed their fellow SPOs seize Mr. Rowe in violation of his Fourth Amendment rights, knew or had reason to know that their fellow SPOs were committing a Constitutional violation, had a reasonable opportunity to prevent the unlawful seizure by intervening to protect Mr. Rowe, and failed to do so.

187.    The conduct of Defendants Parker, Philson, Albany, Perry, Phillips, Arrington, and John Does 1-5 occurred under color of law and constituted callous indifference and reckless disregard for Mr. Rowe's rights under the Fourth Amendment.

188.    The actions of these Individual SPO Defendants are the cause of the injuries described above.  Mr. Rowe is entitled to general, special, and punitive damages.

**COUNT THREE: VIOLATION OF THE FOURTH AMENDMENT –
UNREASONABLE SEARCH**
**Against the Individual SPO Defendants**

189.    Mr. Rowe repeats and incorporates by reference each allegation contained in the preceding paragraphs as if fully set forth herein.

190.    Mr. Rowe asserts this count under 42 U.S.C. § 1983 against all Individual SPO Defendants.

191.    The Individual SPO Defendants were at all times relevant to the actions alleged herein, state actors and persons acting under color of state law within the meaning of Section 1983 because they were, or held themselves out as, commissioned and authorized by the D.C. government to exercise police powers.

192.    During the unlawful seizure of Mr. Rowe, Defendants Hunter, Williams, and other Individual SPO Defendants searched Mr. Rowe's person by reaching into his pockets and removing all items, while other Individual SPO Defendants restrained Mr. Rowe, in violation of his constitutional rights.

193.    Mr. Rowe did not consent to any search of his person, and there was no lawful basis for the search or the seizure of his personal items.

194.    Individual SPO Defendants' conduct occurred under color of law and constituted callous indifference and reckless disregard for Mr. Rowe's rights under the Fourth Amendment.

195.    The actions of the Individual SPO Defendants are the direct cause of the injuries described above.  Mr. Rowe is entitled to general, special, and punitive damages.

**COUNT FOUR: FAILURE TO INTERVENE REGARDING VIOLATIONS OF
FOURTH AMENDMENT – UNREASONABLE SEARCH**
**In the Alternative to Count Three Against Defendants James Parker, Damion
Philson, Delonte Albany, Tyauna Perry, Shamar Phillips, Tyrell Arrington, and John Does
1-5**

196.    Mr. Rowe repeats and incorporates by reference each allegation contained in the preceding paragraphs as if fully set forth herein.

197.    Mr. Rowe asserts this count under 42 U.S.C. § 1983 in the alternative to Count Two against Defendants Parker, Philson, Albany, Perry, Phillips, Arrington, and John Does 1-5.

198.    Defendants Parker, Philson, Albany, Perry, Phillips, Arrington, and John Does 1-5, were at all times relevant to the actions alleged herein, state actors and persons acting under color of state law within the meaning of Section 1983 because they were, or held themselves out as, commissioned and authorized by the D.C. government to exercise police powers.

199.    Defendants Parker, Philson, Albany, Perry, Phillips, Arrington, and John Does 1-5 were at all times present, in uniform, and at least some of whom were armed while Mr. Rowe was unlawfully searched.

200.    To the extent Defendants Parker, Philson, Albany, Perry, Phillips, Arrington, and John Does 1-5 did not participate in the unlawful search of Mr. Rowe, they witnessed their fellow SPOs search Mr. Rowe in violation of his Fourth Amendment rights, knew or had reason to know that their fellow SPOs were committing a Constitutional violation, had a reasonable opportunity to prevent the unlawful search by intervening to protect Mr. Rowe, and failed to do so.

201.    The conduct of Defendants Parker, Philson, Albany, Perry, Phillips, Arrington, and John Does 1-5 occurred under color of law and constituted callous indifference and reckless disregard for Mr. Rowe's rights under the Fourth Amendment.

202.    The actions of these Individual SPO Defendants are the cause of the injuries described above.  Mr. Rowe is entitled to general, special, and punitive damages.

## COUNT FIVE: VIOLATION OF THE FOURTH AND FIFTH AMENDMENTS – EXCESSIVE FORCE

### Against the Individual SPO Defendants and Defendant PChange LLC

203.    Mr. Rowe repeats and incorporates by reference each allegation contained in the preceding paragraphs as if fully set forth herein.

204.    Mr. Rowe asserts this count under 42 U.S.C. § 1983 against all Individual SPO Defendants and Defendant PChange.

205.    The Individual SPO Defendants were at all times relevant to the actions alleged herein, state actors and persons acting under color of state law within the meaning of Section 1983 because they were, or held themselves out as, commissioned and authorized by the D.C. government to exercise police powers.

206.    Mr. Rowe did not engage in any criminal conduct.

207.    Mr. Rowe was not a threat to the safety of the SPOs, himself, or others.

208.    Mr. Rowe had a clearly established constitutional right under the Fourth Amendment to be secure in his person from unreasonable seizure through excessive force.

209.    Mr. Rowe also had a clearly established constitutional right under the Fifth Amendment of the U.S. Constitution to bodily integrity and to be free from excessive force by law enforcement.

210.    The Individual SPO Defendants' actions and use of force described herein were objectively unreasonable in light of the facts and circumstances.

211.    As a result of the excessive force used, Mr. Rowe suffered from pain in his wrists, neck, back, and legs, and his face burned for several days from the pepper spray.  Additionally, because Defendants placed the handcuffs too tightly on Mr. Rowe, he experienced severe numbness in his hands and pain in his wrist for over a month and a half and continues to experience tension in his hands.

212.    Mr. Rowe also incurred costs from the medical attention he sought and lost wages from missing work.

213.    The Individual SPO Defendants' conduct occurred under color of law and constituted callous indifference and reckless disregard for Mr. Rowe's rights under the Fourth and Fifth Amendments.

214.    Defendant PChange was at all times relevant to the actions alleged herein, a state actor and person acting under color of state law within the meaning of Section 1983 because it directed, and had the authority to direct, persons acting under color of state law.

215.    Defendant PChange engaged in a custom of excessive force in that PChange had actual notice of a pattern of unlawful use of force by its employees.

216.    Defendant PChange was negligent and/or deliberately indifferent in its failure to adequately supervise and/or discipline its SPO employees, including the Defendant SPOs, by repeatedly failing to ensure that its SPOs were properly licensed; failing to ensure that its SPOs were properly and adequately trained on how to lawfully carry out their SPO duties, including in connection with firearms, searches and seizures, and the use of force; failing to take appropriate disciplinary action in response to SPO misconduct; and by allowing a custom and practice of unlawful arrests, excessive force, firearm discharges, and other misconduct.

217.    In the alternative, Defendant PChange recklessly disregarded the need to adequately supervise and/or discipline its SPO employees, including the Defendant SPOs, by repeatedly failing to ensure that its SPOs were properly licensed, failing to ensure that its SPOs were properly trained, and failing to discipline SPO misconduct.

218.    The actions of the Individual SPO Defendants and Defendant PChange are the direct cause of the injuries described above.  Mr. Rowe is entitled to general, special, and punitive damages.

### COUNT SIX: FAILURE TO INTERVENE REGARDING VIOLATIONS OF FOURTH AND FIFTH AMENDMENTS – EXCESSIVE FORCE
**In the Alternative to Count Five Against Defendants James Parker, Damion Philson, Delonte Albany, Tyauna Perry, Shamar Phillips, Tyrell Arrington, and John Does 1-5**

219.    Mr. Rowe repeats and incorporates by reference each allegation contained in the preceding paragraphs as if fully set forth herein.

220.    Mr. Rowe asserts this count under 42 U.S.C. § 1983 in the alternative to Count Five against Defendants Parker, Philson, Albany, Perry, Phillips, Arrington, and John Does 1-5.

221.    Defendants Parker, Philson, Albany, Perry, Phillips, Arrington, and John Does 1-5 were at all times relevant to the actions alleged herein, state actors and persons acting under color of state law within the meaning of Section 1983 because they were, or held themselves out as, commissioned and authorized by the D.C. government to exercise police powers.

222.    Defendants Parker, Philson, Albany, Perry, Phillips, Arrington, and John Does 1-5 were at all times present, in uniform, and at least some of whom were armed while excessive force was unlawfully used against Mr. Rowe.

223.    To the extent Defendants Parker, Philson, Albany, Perry, Phillips, Arrington, and John Does 1-5 did not participate in the unlawful use of excessive force against Mr. Rowe, they witnessed their fellow SPOs use unlawfully excessive force against Mr. Rowe in violation of his Fourth and Fifth Amendment rights, knew or had reason to know that their fellow SPOs were committing a Constitutional violation, had a reasonable opportunity to prevent the unlawful use of excessive force by intervening to protect Mr. Rowe, and failed to do so.

224.    The conduct of Defendants Parker, Philson, Albany, Perry, Phillips, Arrington, and John Does 1-5 occurred under color of law and constituted callous indifference and reckless disregard for Mr. Rowe's rights under the Fourth and Fifth Amendments.

225.    The actions of these Individual SPO Defendants are the cause of the injuries described above.  Mr. Rowe is entitled to general, special, and punitive damages.

### COUNT SEVEN: ASSAULT – DISTRICT OF COLUMBIA COMMON LAW
### Against Defendants Bryan Hunter and Stefan Williams

226.    Mr. Rowe repeats and incorporates by reference each allegation contained in the preceding paragraphs as if fully set forth herein.

38

227.    Mr. Rowe asserts this count under District of Columbia common law against Defendants Hunter and Williams.

228.    Defendants Hunter and Williams intentionally threatened to do bodily harm to Mr. Rowe when they approached the car to prevent Mr. Rowe from exiting the parking garage, attempted to force open the car door with Mr. Rowe inside, and attempted, along with other Individual SPO Defendants, to pull Mr. Rowe from the car.  Defendant Hunter further threatened Mr. Rowe when he put his hands on his firearm and threatened to shoot Mr. Rowe if he had to.

229.    Defendants Hunter and Williams threatened to do bodily harm to Mr. Rowe when they threatened to spray Mr. Rowe with pepper spray and when Defendant Hunter held the can of pepper spray to Mr. Rowe's face.  Individual SPO Defendant Williams also threatened to do bodily harm to Mr. Rowe when he threatened to slam his body to the ground.

230.    The conduct of Defendants Hunter and Williams was willful and outrageous.

231.    As a result of this assault, Mr. Rowe suffered substantial harm, including, but not limited to, mental and emotional distress.

232.    The actions of these Individual SPO Defendants are the direct cause of the injuries described above.  Mr. Rowe is entitled to general, special, and punitive damages.

## COUNT EIGHT: BATTERY – DISTRICT OF COLUMBIA COMMON LAW
### Against the Individual SPO Defendants

233.    Mr. Rowe repeats and incorporates by reference each allegation contained in the preceding paragraphs as if fully set forth herein.

234.    Mr. Rowe asserts this count under District of Columbia law against all Individual SPO Defendants.

235.    The Individual SPO Defendants engaged in harmful and offensive contact of Mr. Rowe by grabbing his person, grabbing his dreadlocks, choking him, spraying his face with pepper spray, tightly handcuffing him behind his back, and slamming his body on the ground.

236.    The actions of the Individual SPO Defendants were deliberate, outrageous, and reckless toward the safety of Mr. Rowe, and undertaken with willful disregard for Mr. Rowe's rights.

237.    The actions of the Individual SPO Defendants caused Mr. Rowe serious physical and emotional injuries, including pain in his wrists, neck, back, and legs, and burning in his face for several days from the pepper spray.  Additionally, because Individual SPO Defendants placed the handcuffs too tightly on Mr. Rowe, he experienced severe numbness in his hands and pain in his wrist for over a month and a half and continues to experience tension in his hands.

238.    Mr. Rowe also incurred costs from the medical attention he sought and lost wages from missing work.

239.    The actions of the Individual SPO Defendants are the direct cause of the injuries described above.  Mr. Rowe is entitled to general, special, and punitive damages.

### COUNT NINE: FALSE IMPRISONMENT – DISTRICT OF COLUMBIA COMMON LAW
### Against the Individual SPO Defendants

240.    Mr. Rowe repeats and incorporates by reference each allegation contained in the preceding paragraphs as if fully set forth herein.

241.    Mr. Rowe asserts this count under District of Columbia common law against all Individual SPO Defendants.

242.    The Individual SPO Defendants falsely imprisoned Mr. Rowe by requesting his identification, approaching the vehicle in a threatening manner, threatening Mr. Rowe, telling Mr. Rowe he was under arrest, and forcing him out of his vehicle, all with no valid basis or warrant.

243.    The Individual SPO Defendants further falsely imprisoned Mr. Rowe by forcibly restraining him in handcuffs and slamming him into a fence and onto the ground against his will, with no valid basis or warrant.

244.    Mr. Rowe was then held against his will by the Individual SPO Defendants until MPD arrived and was detained and handcuffed in total for approximately one hour due to the unlawful actions of the Individual SPO Defendants.

245.    The lengthy imprisonment of Mr. Rowe, coupled with the forcible manner in which he was dragged from his car and handcuffed—all without any valid basis—was an outrageous and willful violation of the law.

246.    As a result of this false imprisonment, Mr. Rowe suffered substantial harm, including, but not limited to, emotional distress.

247.    At all times, the Individual SPO Defendants acted in concert and aided and abetted each other by blocking Mr. Rowe's car, and substantially assisted one another to restrain Mr. Rowe in handcuffs.

248.    The actions of the Individual SPO Defendants are the direct cause of the injuries described above.  Mr. Rowe is entitled to general, special, and punitive damages.

### COUNT TEN: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS – DISTRICT OF COLUMBIA COMMON LAW
**Against the Individual SPO Defendants**

249.    Mr. Rowe repeats and incorporates by reference each allegation contained in the preceding paragraphs as if fully set forth herein.

250.    Mr. Rowe asserts this count under District of Columbia law against all Individual SPO Defendants.

251.    The Individual SPO Defendants intentionally assaulted and battered Mr. Rowe, violated his constitutional rights, and abused their power as SPOs, acting with intentional and reckless disregard for his rights.  By (1) violently attempting to pull Mr. Rowe from his car, (2) threatening to use a firearm and pepper spray on Mr. Rowe while he was still in the car with his children, (3) pepper spraying him directly in his face and eyes after he was handcuffed, (4) violently handcuffing and slamming Mr. Rowe into a wooden fence and onto the ground, (5)

threatening to put Mr. Rowe and his children into "the system" so that Mr. Rowe would never see them again, and (6) threatening to bar Mr. Rowe from the property, the Individual SPO Defendants intended to or recklessly caused Mr. Rowe to fear for his safety and the safety of his children.

252.    As a result of the Individual SPO Defendants' intentional and/or reckless acts, Mr. Rowe suffered and continues to suffer severe emotional distress.  Mr. Rowe becomes physically and emotionally tense and anxious whenever he visits Park Southern, especially when he encounters an SPO.  He also sometimes becomes physically and emotionally tense and anxious when encountering SPOs and security guards outside of the property.  Mr. Rowe experienced humiliation from the encounter, which took place in front of his children.  Mr. Rowe's emotional distress from the excessive violence was made even more severe by the threats made by Defendant Hunter (1) to put Mr. Rowe's children into the system, (2) to prevent Mr. Rowe from ever seeing his children again, and (3) to bar Mr. Rowe from the property where his mother lives.  Mr. Rowe relives that trauma and fear every time he returns to Park Southern.

253.    The actions of the Individual SPO Defendants are the direct cause of the injuries described above.  Mr. Rowe is entitled to monetary damages to compensate him for his emotional injury.

254.    Mr. Rowe is further entitled to an award of punitive damages to punish the Defendants for their willful and malicious and/or reckless conduct toward him.

255.    The actions of the Individual SPO Defendants are the direct cause of the injuries described above.  Mr. Rowe is entitled to general, special, and punitive damages.

### COUNT ELEVEN: VICARIOUS LIABILITY FOR ASSAULT – DISTRICT OF COLUMBIA COMMON LAW
### Against Defendant PChange LLC

256.    Mr. Rowe repeats and incorporates by reference each allegation contained in the preceding paragraphs as if fully set forth herein.

257.    Mr. Rowe asserts this count under District of Columbia common law against Defendant PChange.

258.    At all relevant times during the circumstances described in this Complaint, Individual SPO Defendants Hunter and Williams were acting within the scope of their duties as SPOs employed by Defendant PChange, contracted and managed by Defendant Vesta, and appointed pursuant to D.C. Code § 5-129.02.

259.    Defendant PChange is liable for the acts of its agents, and should be held liable for the common law claim for assault against Individual SPO Defendants Hunter and Williams and pay appropriate damages to Mr. Rowe.

## COUNT TWELVE: VICARIOUS LIABILITY FOR BATTERY – DISTRICT OF COLUMBIA COMMON LAW
### Against Defendant PChange LLC

260.    Mr. Rowe repeats and incorporates by reference each allegation contained in the preceding paragraphs as if fully set forth herein.

261.    Mr. Rowe asserts this count under District of Columbia law against Defendant PChange.

262.    At all relevant times during the circumstances described in this Complaint, the Individual SPO Defendants were acting within the scope of their duties as SPOs employed by Defendant PChange, contracted and managed by Defendant Vesta, and appointed pursuant to D.C. Code § 5-129.02.

263.    Defendant PChange is liable for the acts of its agents and should be held liable for the common law claim for battery against the Individual SPO Defendants and pay appropriate damages to Mr. Rowe.

## COUNT THIRTEEN: VICARIOUS LIABILITY FOR FALSE IMPRISONMENT – DISTRICT OF COLUMBIA COMMON LAW
### Against Defendant PChange LLC

264.    Mr. Rowe repeats and incorporates by reference each allegation contained in the preceding paragraphs as if fully set forth herein.

265.    Mr. Rowe asserts this count under District of Columbia law against Defendant PChange.

266.    At all relevant times during the circumstances described in this Complaint, the Individual SPO Defendants were acting within the scope of their duties as SPOs employed by Defendant PChange, contracted and managed by Defendant Vesta, and appointed pursuant to D.C. Code § 5-129.02.

267.    Defendant PChange is liable for the acts of its agents, and should be held liable for the common law claim for false imprisonment against the Individual SPO Defendants and pay appropriate damages to Mr. Rowe.

## COUNT FOURTEEN: VICARIOUS LIABILITY FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS – DISTRICT OF COLUMBIA COMMON LAW
### Against Defendant PChange LLC

268.    Mr. Rowe repeats and incorporates by reference each allegation contained in the preceding paragraphs as if fully set forth herein.

269.    Mr. Rowe asserts this count under District of Columbia law against Defendant PChange.

270.    At all relevant times during the circumstances described in this Complaint, the Individual SPO Defendants were acting within the scope of their duties as SPOs employed by Defendant PChange, contracted and managed by Defendant Vesta, and appointed pursuant to D.C. Code § 5-129.02.

271.    Defendant PChange is liable for the acts of its agents and should be held liable for the common law claim for intentional infliction of emotional distress against the Individual SPO Defendants and pay appropriate damages to Mr. Rowe.

**COUNT FIFTEEN: VICARIOUS LIABILITY FOR ASSAULT – DISTRICT OF COLUMBIA COMMON LAW**
**Against Defendant Vesta Management DC, LLC, Vesta Corporation, Vesta Equity Corporation, Vesta Management Corporation, Vesta PSRC, LLC, and 800 Southern Avenue, LLC**

272.    Mr. Rowe repeats and incorporates by reference each allegation contained in the preceding paragraphs as if fully set forth herein.

273.    Mr. Rowe asserts this count under District of Columbia common law against the Vesta Entities.

274.    At all relevant times during the circumstances described in this Complaint, Individual SPO Defendants Hunter and Williams were acting within the scope of their duties as SPOs employed by Defendant PChange, contracted and managed by Defendant Vesta, and appointed pursuant to D.C. Code § 5-129.02.

275.    Defendant Vesta, which contracts with Defendant PChange to provide security services at the Park Southern property, has and exercises the power to control the conduct of the SPOs employed by Defendant PChange, placing the SPOs in an employee-employer or master-servant relationship with Defendant Vesta.

276.    In the alternative, Defendant Vesta retains liability over the acts of its independent contractor, Defendant PChange, and its agents, because their work as SPOs at Park Southern implicated Vesta's nondelegable duties to their tenants and guests, and the SPOs' work was inherently dangerous.

277.    Defendant Vesta is liable for the acts of its agents, or independent contractors performing inherently dangerous work that also implicate nondelegable duties, and should be held

liable for the common law claim for assault against Individual SPO Defendants Hunter and Williams and pay appropriate damages to Mr. Rowe.

278.    The Vesta Entities share a unity of ownership and interest, and the interests of justice and equity support disregarding their corporate form and holding them jointly and severally liable for the harm to Mr. Rowe.

## COUNT SIXTEEN: VICARIOUS LIABILITY FOR BATTERY – DISTRICT OF COLUMBIA COMMON LAW
**Against Defendant Vesta Management DC, LLC, Vesta Corporation, Vesta Equity Corporation, Vesta Management Corporation, Vesta PSRC, LLC, and 800 Southern Avenue, LLC**

279.    Mr. Rowe repeats and incorporates by reference each allegation contained in the preceding paragraphs as if fully set forth herein.

280.    Mr. Rowe asserts this count under District of Columbia common law against the Vesta Entities.

281.    At all relevant times during the circumstances described in this Complaint, the Individual SPO Defendants were acting within the scope of their duties as SPOs employed by Defendant PChange, contracted and managed by Defendant Vesta, and appointed pursuant to D.C. Code § 5-129.02.

282.    Defendant Vesta, which contracts with Defendant PChange to provide security services at the Park Southern property, has and exercises the power to control the conduct of the SPOs employed by Defendant PChange, placing the SPOs in an employee-employer or master-servant relationship with Defendant Vesta.

283.    In the alternative, Defendant Vesta retains liability over the acts of its independent contractor, Defendant PChange, and its agents, because their work as SPOs at Park Southern implicated Defendant Vesta's nondelegable duties to their tenants and guests, and the SPOs' work was inherently dangerous.

284.     Defendant Vesta is liable for the acts of its agents, or independent contractors performing inherently dangerous work that also implicate nondelegable duties, and should be held liable for the common law claim for battery against the Individual SPO Defendants and pay appropriate damages to Mr. Rowe.

285.     The Vesta Entities share a unity of ownership and interest, and the interests of justice and equity support disregarding their corporate form and holding them jointly and severally liable for the harm to Mr. Rowe.

### COUNT SEVENTEEN: VICARIOUS LIABILITY FOR FALSE IMPRISONMENT – DISTRICT OF COLUMBIA COMMON LAW
**Against Defendant Vesta Management DC, LLC, Vesta Corporation, Vesta Equity Corporation, Vesta Management Corporation, Vesta PSRC, LLC, and 800 Southern Avenue, LLC**

286.     Mr. Rowe repeats and incorporates by reference each allegation contained in the preceding paragraphs as if fully set forth herein.

287.     Mr. Rowe asserts this count under District of Columbia common law against Vesta Entities.

288.     At all relevant times during the circumstances described in this Complaint, the Individual SPO Defendants were acting within the scope of their duties as SPOs employed by Defendant PChange, contracted and managed by Defendant Vesta, and appointed pursuant to D.C. Code § 5-129.02.

289.     Defendant Vesta, which contracts with Defendant PChange to provide security services at the Park Southern property, has and exercises the power to control the conduct of the SPOs employed by Defendant PChange, placing the SPOs in an employee-employer or master-servant relationship with Defendant Vesta.

290.     In the alternative, Defendant Vesta retains liability over the acts of its independent contractor, Defendant PChange, and its agents, because their work as SPOs at Park Southern

implicated Defendant Vesta's nondelegable duties to their tenants and guests, and the SPOs' work was inherently dangerous.

291.    Defendant Vesta is liable for the acts of its agents, or independent contractors performing inherently dangerous work that also implicate nondelegable duties, and should be held liable for the common law claim for false imprisonment against the Individual SPO Defendants and pay appropriate damages to Mr. Rowe.

292.    The Vesta Entities share a unity of ownership and interest, and the interests of justice and equity support disregarding their corporate form and holding them jointly and severally liable for the harm to Mr. Rowe.

### COUNT EIGHTEEN: VICARIOUS LIABILITY FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS – DISTRICT OF COLUMBIA COMMON LAW
### Against Defendant Vesta Management DC, LLC, Vesta Corporation, Vesta Equity Corporation, Vesta Management Corporation, Vesta PSRC, LLC, and 800 Southern Avenue, LLC

293.    Mr. Rowe repeats and incorporates by reference each allegation contained in the preceding paragraphs as if fully set forth herein.

294.    Mr. Rowe asserts this count under District of Columbia common law against the Vesta Entities.

295.    At all relevant times during the circumstances described in this Complaint, the Individual SPO Defendants were acting within the scope of their duties as SPOs employed by Defendant PChange, contracted and managed by Defendant Vesta, and appointed pursuant to D.C. Code § 5-129.02.

296.    Defendant Vesta, which contracts with Defendant PChange to provide security services at the Park Southern property, has and exercises the power to control the conduct of the SPOs employed by Defendant PChange, placing the SPOs in an employee-employer or master-servant relationship with Defendant Vesta.

297.    In the alternative, Defendant Vesta retains liability over the acts of its independent contractor, Defendant PChange, and its agents, because their work as SPOs at Park Southern implicated Defendant Vesta's nondelegable duties to their tenants and guests, and the SPOs' work was inherently dangerous.

298.    Defendant Vesta is liable for the acts of its agents, or independent contractors performing inherently dangerous work that also implicate nondelegable duties, and should be held liable for the common law claim for intentional infliction of emotional distress against the Individual SPO Defendants and pay appropriate damages to Mr. Rowe.

299.    The Vesta Entities share a unity of ownership and interest, and the interests of justice and equity support disregarding their corporate form and holding them jointly and severally liable for the harm to Mr. Rowe.

## COUNT NINETEEN: NEGLIGENT SUPERVISION, HIRING, AND RETENTION – DISTRICT OF COLUMBIA COMMON LAW
### Against Defendant PChange, LLC

300.    Mr. Rowe repeats and incorporates by reference each allegation contained in the preceding paragraphs as if fully set forth herein.

301.    Mr. Rowe asserts this count under District of Columbia common law against Defendant PChange.

302.    Defendant PChange negligently supervised the Individual SPO Defendants because its supervisors knew or should have known that the Individual SPO Defendants were behaving dangerously or incompetently.

303.    Defendant PChange failed to ensure that its SPOs were licensed to perform the duties of an SPO, despite being legally required to do so.

304.    Defendant PChange knowingly allowed certain Individual SPO Defendants to carry firearms and pepper spray in the scope of their employment, despite not having an effective SPO license or firearm license.

305.    Defendant PChange failed to instruct and train the Individual SPO Defendants as to the proper manner, means, and bases with which to carry out lawful stops, searches, and seizures as well as on the use of force.

306.    Defendant PChange took no action to discipline or provide remedial training to its SPOs following numerous instances of misconduct alleged herein.

307.    The actions of Defendant PChange are the cause of the injuries described above, and Mr. Rowe is entitled to general, special, and punitive damages.

**COUNT TWENTY: NEGLIGENT SUPERVISION, HIRING, AND RETENTION – DISTRICT OF COLUMBIA COMMON LAW**
**Against Defendant Vesta Management DC, LLC, Vesta Corporation, Vesta Equity Corporation, Vesta Management Corporation, Vesta PSRC, LLC, and 800 Southern Avenue, LLC**

308.    Mr. Rowe repeats and incorporates by reference each allegation contained in the preceding paragraphs as if fully set forth herein.

309.    Mr. Rowe asserts this count under District of Columbia common law against the Vesta Entities.

310.    Defendant Vesta negligently supervised the Individual SPO Defendants because its property management staff knew or should have known that the Individual SPO Defendants were behaving dangerously or incompetently.

311.    On information and belief, during the incident, Defendant Vesta property management staff had access to cameras where the incident occurred.

312.    Mr. Rowe's mother informed Defendant Vesta property management staff of the Individual SPO Defendants' unlawful actions toward Mr. Rowe as the incident was unfolding. The Vesta property management staff, however, refused to take supervisory action after being informed of the  Individual SPO Defendants' unlawful actions, merely confirming that MPD had been called and endorsing the Individual SPO Defendants' conduct as an exercise of their policing rights.

313.    Further, Defendant Vesta was aware of a pattern of excessive use of force and other misconduct by PChange SPOs, including certain Individual SPO Defendants, and was, or should have been, aware that PChange SPOs, including certain Individual SPO Defendants, were carrying out SPO duties at Park Southern while unlicensed.  Yet, Defendant Vesta failed to discipline such misconduct, failed to ensure SPOs it had barred from the property remained off the property, failed to enforce prohibitions against SPOs loitering on the property, failed to ensure SPOs were properly licensed, and failed to exercise proper control and supervision over the conduct of the Individual SPO Defendants.

314.    The actions of Defendant Vesta caused the injuries described above, and Mr. Rowe is entitled to general, special, and punitive damages.

315.    The Vesta Entities share a unity of ownership and interest, and the interests of justice and equity support disregarding their corporate form and holding them jointly and severally liable for the harm to Mr. Rowe.

## **PRAYER FOR RELIEF**

WHEREFORE, Mr. Rowe respectfully requests that this Court:

A.    Enter a judgment in favor of Mr. Rowe and grant the following:

B.    Declare that the Individual SPO Defendants and Defendant PChange violated Mr. Rowe's rights under the Fourth Amendment to be free from unlawful seizure and unreasonable search;

C.    Declare that the Individual SPO Defendants and Defendant PChange violated Mr. Rowe's rights under the Fourth and Fifth Amendments to be free from excessive force;

D.    Declare that Defendants Hunter, Williams, PChange, and Vesta violated Mr. Rowe's rights under District of Columbia law to be free from assault;

E.    Declare that all Defendants violated Mr. Rowe's rights under District of Columbia law to be free from battery, false imprisonment, and intentional infliction of emotional distress;

F.      Declare that Defendant PChange violated Mr. Rowe's rights under District of

Columbia law by negligently supervising the Individual SPO Defendants;

G.      Declare that the Vesta Entities violated Mr. Rowe's rights under District of

Columbia law by negligently supervising the Individual SPO Defendants;

H.      Award Mr. Rowe compensatory damages for the pain and suffering, lost

compensation, and medical expenses caused by Defendants' actions;

I.      Award Mr. Rowe punitive damages arising from the nature of the Defendants'

actions;

J.      Award Mr. Rowe the costs and reasonable attorneys' fees incurred in connection

with this action;

K.      Grant such further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

Dated: February 26, 2024                    Respectfully Submitted,

                                           /s/ *David A. Last*
                                           David A. Last (D.C. Bar No. 476335)
Thomas A. Bednar (D.C. Bar No. 493640)
Jessica Hollis (D.C. Bar No. 1618781)
Caleb J. Robertson (D.C. Bar No. 1720614)
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
2112 Pennsylvania Avenue, NW
Washington, D.C. 20037
Phone: (202) 974-1836 (Bednar)
Fax: (202) 974-1999
*dlast@cgsh.com*
*tbednar@cgsh.com*
*jhollis@cgsh.com*
*cjrobertson@cgsh.com*

                                           /s/ *Dennis A. Corkery*
Dennis A. Corkery (D.C. Bar No. 1016991)
WASHINGTON LAWYERS'
COMMITTEE FOR CIVIL RIGHTS AND
URBAN AFFAIRS
700 14th St., NW
Ste. 400
Washington, D.C. 20005
(202) 319-1000
dennis_corkery@washlaw.org


*Attorneys for Plaintiff*