UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MICHAEL ROWE,

    Plaintiff,

        v.

PCHANGE PROTECTIVE SERVICES
LLC, *et al.*,

    Defendants.

Civil Action No. 22-3098 (JEB)

## MEMORANDUM OPINION

During a visit to his mother's apartment building several years ago, Plaintiff Michael Rowe was allegedly assaulted by multiple Special Police Officers employed to guard the edifice. In response, he brought various claims against PChange, LLC (the SPOs' employer), Vesta Management DC, LLC (the building's management company), and a number of the individual SPOs. Although Vesta has now settled with Rowe, its Crossclaim against PChange for breach of contract, contractual indemnification, and contribution is still live. Vesta alleges that PChange acquired inadequate insurance and breached its contractual obligation to defend and indemnify Vesta in all lawsuits arising out of Rowe's assault. Both parties have now moved for summary judgment on that Crossclaim. Agreeing with Vesta that PChange was obligated to defend it, the Court will grant its Motion.

## I.    Background

As much of the factual background to this lawsuit has been comprehensively covered in the Court's prior Opinions, see Rowe v. PChange Prot. Servs., 2023 WL 2598683 (D.D.C. Mar.

22, 2023); Rowe v. PChange LLC, 2024 WL 1655348 (D.D.C. Apr. 17, 2024), the Court will

focus on those facts relevant to Vesta's Crossclaim.

After dropping his mother and sister off at his mother's apartment complex in Southeast

Washington in late October 2021, Rowe encountered several SPOs employed by PChange

blocking the parking garage's exit. See Rowe, 2023 WL 2598683, at *1. A few car honks and

some choice words later, Plaintiff found himself forced out of the car, handcuffed, pepper-

sprayed, and slammed against the ground — all because he had refused to provide identification

when asked, and all in sight of his three young children who were "screaming in the back seat of

the car." Id. Eventually, officers from the Metropolitan Police Department arrived and released

Rowe, explaining to the SPOs that they could not detain individuals for failing to provide

identification and "could use physical force only to defend themselves or others." Id. at *2.

Their intervention, however, was small comfort for Plaintiff: a year later, he filed suit

against PChange, Vesta, and several individual SPOs. See id. His Complaint, as twice amended,

alleges 20 counts under federal and District law and asks for a range of declaratory and monetary

relief. See ECF No. 125 (Second Am. Compl.), ¶¶ 157–289 & pp. 45–46.

In May of last year, Vesta filed its Answer to the Second Amended Complaint and

simultaneously brought a Crossclaim against PChange — the focus of the instant dispute. See

ECF No. 132 (Answer) at ECF p. 23 (Crossclaim). It alleged that PChange was obligated by

contract to defend Vesta in all lawsuits arising out of the events that transpired in the parking

garage. See Crossclaim, ¶¶ 3–12. According to Vesta, however, PChange has neither defended

it nor — "despite multiple requests" — indemnified it "by paying Vesta's reasonable defense

costs." Id., ¶ 13; see also ECF No. 156-2 (PChange Counter SMF), ¶¶ 15–18 (not disputing that

it has refused to defend Vesta). Vesta also alleged that PChange had maintained inadequate

liability insurance under that same contract because the policy had a $50,000 sublimit, which

was less than the $1,000,000 limit the contract had specified.  See id., ¶¶ 14–18; see also Clear

Blue Specialty Ins. Co. v. Rowe, No. 24-1216, ECF No. 57 (Order) at 2 (D.D.C. Jan. 24, 2025)

(finding that PChange's insurance contract "contained a $50,000 sublimit for claims or suits for

bodily harm arising from an assault or battery").  Finally, Vesta asserted that it was in any event

entitled to contribution from PChange if eventually found liable for the events in question.  See

Crossclaim, ¶¶ 24–25.  It thus brought three counts against PChange — for breach of contract,

contractual indemnification, and "indemnification and contribution," id., ¶¶ 2–26 — and sought

monetary relief in the form of "costs of suit, attorneys' fees, [and] reasonable defense costs."  Id.

at ECF p. 27.

Vesta has now moved for summary judgment, see ECF No. 147-1 (MSJ), which PChange

has opposed in conjunction with its own Cross-Motion for Summary Judgment.  See ECF No.

156-1 (Opp. & Cross MSJ).  After briefing on those Motions was complete, Rowe settled his

claims against Vesta and stipulated to its dismissal from the suit.  See ECF No. 182 (Stipulation

of Dismissal).  While this means that PChange does not have any ongoing duty to defend Vesta,

the latter still believes that it should be indemnified for the defense costs it incurred.

## II.    Legal Standard

Summary judgment is appropriate where the movant "is entitled to judgment as a matter

of law upon material facts that are not genuinely disputed."  Airlie Foundation v. IRS, 283 F.

Supp. 2d 58, 61 (D.D.C. 2003); see also Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 247–48 (1986); CEI Wash. Bureau, Inc. v. DOJ, 469 F.3d 126, 129 (D.C. Cir.

2006).  A fact is "material" if it is capable of affecting the substantive outcome of the litigation.

Liberty Lobby, 477 U.S. at 248; Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006).  A

dispute is "genuine" if the evidence is such that a reasonable factfinder could return a verdict for

the non-moving party.  Liberty Lobby, 477 U.S. at 248; see Scott v. Harris, 550 U.S. 372, 380

(2007); Holcomb, 433 F.3d at 895.  "A party asserting that a fact cannot be or is genuinely

disputed must support the assertion" by "citing to particular parts of materials in the record" or

"showing that the materials cited do not establish the absence or presence of a genuine dispute,

or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P.

56(c)(1).

In considering a motion for summary judgment, "[t]he evidence of the non-movant is to

be believed, and all justifiable inferences are to be drawn in [its] favor."  Liberty Lobby, 477

U.S. at 255; see also Mastro v. Potomac Elec. Power Co., 447 F.3d 843, 850 (D.C. Cir. 2006);

Aka v. Wash. Hosp. Ctr., 156 F.3d 1284, 1288 (D.C. Cir. 1998) (en banc).  "In cases in which

the dispositive issue involves the construction of a contract," however, "summary judgment may

be appropriate if the provisions of the contract are unambiguous."  Davis v. Chevy Chase Fin.

Ltd., 667 F.2d 160, 169 (D.C. Cir. 1981).

## III.    Analysis

Before getting to the heart of its analysis, the Court addresses two preliminary issues.

First, as it finds that PChange was contractually obligated to defend and indemnify Vesta, it does

not reach Vesta's separate claims that PChange carried inadequate insurance and that Vesta

would be entitled to contribution if its indemnification claim was unavailing.  Second, no party

appears to dispute that Vesta's state-law claims are governed by the law of the District of

Columbia, see MSJ at 2 (citing District law); Opp. & Cross MSJ at 7–9 (same), and the contract

itself provides that D.C. law shall govern its interpretation.  See ECF No. 147-3 (Contract) at

ECF p. 3.  The Court will thus follow suit.

Under District law, "the meaning of an integrated contract is an issue for the finder of

fact only if the contractual language is ambiguous."  Dodek v. CF 16 Corp., 537 A.2d 1086,

1092 (D.C. 1988). "The question of whether a contract is ambiguous," however "is one of law to be determined by the court." Holland v. Hannan, 456 A.2d 807, 815 (D.C. 1983). Such ambiguity "exists only if the court determines that the proper interpretation of the contract cannot be derived from the contractual language exclusively[] and requires consideration of evidence outside the contract itself." Steele Foundations, Inc. v. Clark Const. Grp. Inc., 937 A.2d 148, 153 (D.C. 2007). Said differently, a contract is not ambiguous simply because the parties "present[] two competing versions of what [they] intended by the disputed language." Id. (quotation marks omitted).

The contract in question here was entered into by PChange and 800 Southern Avenue, LLC, the owner of the apartment complex where the events occurred. See PChange Counter SMF, ¶ 1. Section 15 of the contract — which is worth quoting at length — states the following:

> To the fullest extent permitted by law, the Contractor [PChange] shall indemnify, defend (with legal counsel subject to the reasonable approval of Owner's Agent [Vesta Management Corporation]) and hold harmless Owner [800 Southern Avenue, LLC], all additional Insureds and its agents and employees from and against all losses, claims, demands, costs, liabilities, penalties, damages and suits, including actual fees of attorneys, experts and consultants, whether arising during the course of or after completion of [PChange's] work/services, caused by, arising out of, resulting from or occurring in connection with the performance of the work/services by [PChange], or its subcontractors, agents and employees, whether or not caused in part by the active or passive negligence or other fault of a party indemnified excepting only losses, demands, claims, costs, liability, penalties, damages or suits caused by the sole gross negligence of an indemnit[ee] hereunder.

ECF No. 147-3 (Contract) at ECF p. 4; see also PChange Counter SMF, ¶ 3 (not disputing "contents" of contract). The contract additionally lists Vesta as one of the "Additional Insureds." Contract at ECF p. 3; see also PChange Counter SMF, ¶ 4 (conceding this fact).

This language unambiguously supports Vesta's position. In signing the contract, PChange committed to "indemnify" and "defend" Vesta (as an "additional Insured[]") against "all losses, claims, demands, costs, liability, penalties, damages and suits, including actual fees of attorneys" that "aris[e] out of" or "occur[] in connection with the performance of the work/services by" PChange or its agents. See Contract at ECF p. 4. That commitment plainly encompasses defending Vesta in Rowe's suit against it, which "arises" entirely out of the actions of the SPOs employed by PChange. See Second Am. Compl., ¶¶ 251–74, 283–89. As a result, "a reasonable person in the position of the parties" would have thought that PChange's defense obligations were implicated. Dodek, 537 A.2d at 1093 (quotation marks omitted); see also Cont'l Cas. Co. v. Cole, 809 F.2d 891, 895 (D.C. Cir. 1987) ("Under District of Columbia Law, . . . [i]f the complaint states a cause of action within the coverage of the policy, the insurance company must defend.").

In resisting this conclusion, PChange attempts various evasions of the contract's plain language, but none succeeds. It first asserts that "a 'duty to defend' is an insurance coverage concept" for which PChange — "clearly not an insurer" — is not the appropriate party. See Opp. & Cross MSJ at 5. To be sure, duties to defend frequently arise in the context of insurance disputes, as the cases cited by PChange illustrate. See id. at 5. But an insurance policy is simply one type of contract. See Stevens v. United Gen. Title Ins. Co., 801 A.2d 61, 66 (D.C. 2002). The duty to defend is thus, at base, an obligation that can be written into any contract. See Clear Blue Specialty Ins. Co. v. TFS NY, Inc., 690 F. Supp. 3d 138, 143 (E.D.N.Y. 2023) ("[T]he duty to defend is contractual in nature.") (quotation marks omitted). Here, PChange is unquestionably party to a contract requiring it to defend and indemnify Vesta for claims arising out of the actions of PChange's employees.

PChange next protests that it had no duty to defend Vesta against Rowe's allegations of

Vesta's <u>own</u> negligence in supervising the SPOs.  <u>See</u> Opp. & Cross MSJ at 6–10.  According to

PChange, while it concedes that the vicarious-liability claims against Vesta may indeed stem

from "actions alleged to have been committed by" the SPOs, it "never intended to defend and/or

indemnify claims brought against Vesta for its own alleged negligence."  <u>Id.</u> at 6, 7.  That

concession, however, dooms its argument.  As Vesta rightly observes, <u>see</u> MSJ at 3; ECF No.

161 (Reply & Opp.) at 4–5, PChange's duty to defend was triggered as soon as just <u>one</u> of

Rowe's allegations fell within the scope of the contract.  <u>See</u> <u>Wash. Sports & Ent., Inc. v. United</u>

<u>Coastal Ins. Co.</u>, 7 F. Supp. 2d 1, 7 (D.D.C. 1998) ("Under District of Columbia law, . . . [a

party] must defend an entire claim if it appears that at least one count of a complaint falls within

the scope of policy coverage, even though the [party] might later be absolved of a duty to

indemnify on certain counts.").  Regardless of whether PChange is correct about its <u>indemnity</u>

obligations for the negligent-supervision claim, then, it was still obligated to <u>defend</u> Vesta as

long as at least one other count "aris[es] out of" the garage incident.  <u>See</u> Contract at ECF p. 4.

As it concedes, four do.  <u>See</u> Opp. & Cross MSJ at 6; Second Am. Compl., ¶¶ 251–74.

Besides, PChange is wrong even on the merits.  It seeks support for its position in

<u>Safeway Stores, Inc v. Chamberlain Prot. Servs., Inc.</u>, 451 A.2d 66 (D.C. 1982), which held that

"allegations of negligent hiring, supervising and training constitute direct allegations of

negligence" for which reimbursement of attorney fees was not possible under a theory of implied

indemnity.  <u>See id.</u> at 71, 72.  <u>Safeway</u> rather conspicuously did not concern, however, a

contractual specification of the parties' defense and indemnity obligations — which is precisely

the issue here.  Regardless of the typical rule, PChange's specific duty to defend and indemnify

Vesta is outlined by the contract it signed, which covers <u>all</u> losses or liabilities "arising out of" its

7

agents' actions.  See Contract at ECF p. 4.  That expansive language plainly includes Rowe's

negligent-supervision claim against Vesta, which is predicated on his showing that PChange's

employees harmed him, see Phelan v. City of Mt. Rainier, 805 A.2d 930, 940 (D.C. 2002); see

also Daka, Inc. v. McCrae, 839 A.2d 682, 693 & n.12 (D.C. 2003) (suggesting that "negligent

supervision . . . requires logically antecedent proof of a tort committed by the supervised

employee" and citing cases), and which thus "aris[es] out of" or "occur[s] in connection with"

the actions of those employees.  See Contract at ECF p. 4; Second Am. Compl., ¶¶ 285–88.  In

that sense, it differs little from Rowe's vicarious-liability claims against Vesta, which PChange

already concedes are related to its employees' actions.  See Opp. & Cross MSJ at 6.  Were there

any doubt, moreover, the contract specifically contemplates that Vesta's own "active or passive

negligence" — *e.g.*, its negligent supervision or retention of the SPOs — might contribute to the

claims for which it seeks indemnification, yet it nonetheless requires PChange to defend against

such claims unless they result from Vesta's "sole gross negligence."  Contract at ECF p. 4.

PChange might be surprised that it undertook such obligations in signing the contract.

Indeed, District law instructs that "[a]n indemnity provision . . . 'should not be construed to

permit an indemnitee to recover for his or her own negligence unless the court is firmly

convinced that such an interpretation reflects the intention of the parties.'"  W.M. Schlosser Co.,

Inc. v. Md. Drywall Co., Inc., 673 A.2d 647, 653 (D.C. 1996) (quoting United States v.

Seckinger, 397 U.S. 203, 211 (1970)) (cleaned up).  That intention, however, is determined by

"the written language embodying the terms of [the] agreement . . . , regardless of the intent of the

parties at the time they entered into the contract."  Armenian Assembly of Am., Inc. v. Cafesjian,

758 F.3d 265, 278 (D.C. Cir. 2014) (quoting DSP Venture Grp., Inc. v. Allen, 830 A.2d 850, 852

(D.C. 2003)) (cleaned up).  Where an agreement indemnifies a party for "all" claims arising out

of the contract's scope of work, courts have therefore not hesitated to find that it covers the

party's own negligence — even in the absence of language (as here) explicitly providing for

indemnification in such circumstances.  See W.M. Schlosser, 673 A.2d at 653–54 (language

indemnifying party for "all claims, liabilities and expenses . . . arising out of or resulting from or

in connection with" the work under contract encompassed claims premised on that party's own

negligence); Moses-Ecco Co. v. Roscoe-Ajax Corp., 320 F.2d 685, 687–88 (D.C. Cir. 1963)

(similar); Princemont Constr. Corp. v. Baltimore & O.R. Co., 131 A.2d 877, 877–78 (D.C. 1957)

(similar).  The Court, accordingly, has no trouble concluding that the contract unambiguously

required PChange to defend Vesta against all of Rowe's claims against it.

       PChange's last maneuver is to seek refuge in the indemnity provision's exception for

losses arising from Vesta's "sole gross negligence."   Contract at ECF p. 4; see ECF No. 164

(PChange Reply) at 8–9.  According to PChange, Rowe's negligent-supervision claim against

Vesta must have alleged something even worse than gross negligence because he sought punitive

damages, which under D.C. law "are reserved for only those tortious acts that are replete with

malice."  PChange Reply at 9 (quoting Doe v. De Amigos, LLC, 987 F. Supp. 2d 12, 17 (D.D.C.

2013); see also Harvey v. Mohammed, 841 F. Supp. 2d 164, 180–81 (D.D.C. 2012) ("A showing

of negligence — even gross negligence — is insufficient to support an award of punitive

damages.").  This argument is unconvincing.  The Court is at a loss to see how a claim for

negligent supervision, hiring, or retention could somehow simultaneously allege a tort of

intentional malice, and PChange does not connect those dots.  Nor do any of the other allegations

against Vesta in the Second Amended Complaint (request for punitive damages aside) rise to the

level of gross negligence, let alone "sole" gross negligence — if such a thing is even possible on

a negligent-supervision claim.  On the contrary, Rowe alleges only that Vesta "negligently

supervised" the SPOs, "refused to take supervisory action" during the incident, "failed to discipline" SPOs despite being aware of "a pattern of excessive use of force and other misconduct," and permitted some SPOs to "carry[] out SPO duties . . . while unlicensed." Second Am. Compl., ¶¶ 285, 287–88.  That is garden-variety negligence, nothing more. Cf. Atkinson v. Dist. of Columbia, 281 A.3d 568, 571 (D.C. 2022) ("Gross negligence requires such an extreme deviation from the ordinary standard of care as to support a finding of wanton, willful and reckless disregard or conscious indifference for the rights and safety of others.") (quotation marks omitted).

PChange therefore had a clear duty to defend Vesta against all claims arising out of the events that transpired in the parking garage.  Because it has refused to do so, and all claims against Vesta have now been settled, that duty merges with PChange's concurrent obligation to indemnify Vesta for all reasonable defense costs to date.  See Sherman v. Ambassador Ins. Co., 670 F.2d 251, 258–59 (D.C. Cir. 1981).  The next step will be for the parties to determine the specific amount, which the Court will address at an ensuing status conference.

## IV.     Conclusion

For the foregoing reasons, the Court will grant Vesta's Motion for Summary Judgment and deny PChange's Cross-Motion for Summary Judgment.  A separate Order so stating shall issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date:  March 5, 2025