UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MICHAEL ROWE,

    Plaintiff,

    v.

PCHANGE LLC, *et al.*,

    Defendants.

Civil Action No. 22-3098 (JEB)

**MEMORANDUM OPINION**

In October 2021, Plaintiff Michael Rowe was assaulted by a group of Special Police Officers privately employed to guard his mother's apartment building. He brought suit against the SPOs; their employer, PChange, LLC; and the building's management company, Vesta Management DC, LLC. Although Rowe eventually settled with both Vesta and PChange, the two companies continue to litigate PChange's obligation to defend and indemnify Vesta.

The Court has recently resolved that dispute in Vesta's favor, granting summary judgment on its Crossclaim against PChange. Vesta then moved for attorney fees. When PChange failed to oppose the fee motion, the Court granted it as conceded under Local Civil Rule 7(b). PChange now moves for reconsideration, claiming mistake and newly discovered evidence. Because neither ground supports relief under Federal Rule of Civil Procedure Rule 60(b), the Court will deny the Motion.

**I.    Background**

As the Court has already recounted the factual background in detail in earlier Opinions, see Rowe v. PChange Prot. Servs. (Rowe I), 2023 WL 2598683 (D.D.C. Mar. 22, 2023); Rowe v.

1

PChange LLC (Rowe II), 2024 WL 1655348 (D.D.C. Apr. 17, 2024), and Plaintiff has since settled his claims with both companies, see ECF Nos. 182 (Stipulation of Dismissal as to Vesta); 210 (Stipulation of Dismissal as to PChange), the Court provides only a brief account here, focusing on the factual and procedural history relevant to the present Motion.

In late 2021, Rowe encountered several SPOs in the parking garage of his mother's apartment complex who were blocking his way. See Rowe I, 2023 WL 2598683, at *1. After honking his car horn to pass and shouting some choice words, Plaintiff was stopped by the SPOs and asked to provide identification. Id. When he refused, the SPOs forcibly removed him from his car, handcuffed him, and pepper-sprayed him. Id. These events formed the basis of this suit, which Rowe filed in October 2022. See ECF No. 1 (Compl.). His Complaint, as twice amended, asserted a plethora of claims against PChange, Vesta, and several individual SPOs. See ECF No. 125 (Second Am. Compl.), ¶¶ 157–289.

In May 2024, Vesta filed its Answer to the Second Amended Complaint and also filed a Crossclaim against PChange. See ECF No. 132 (Answer) at ECF p. 23 (Crossclaim). Vesta alleged that under an August 1, 2019, contract, PChange was obligated to defend and indemnify it in any lawsuit arising out of the incident. Id. at ECF pp. 23–27. Vesta sought monetary relief in the form of "costs of suit, attorneys' fees, [and] reasonable defense costs." Id. at ECF p. 27.

The two companies then cross-moved for summary judgment on Vesta's Crossclaim. See ECF Nos. 147-1 (MSJ);156-1 (Opp. & Cross MSJ). After briefing on those Motions was completed, Rowe settled his claims against Vesta for $15,000 and stipulated to its dismissal from the suit. See Stipulation of Dismissal as to Vesta; ECF No. 197 (Mot. for Att'y Fees) at 2.

On March 5, 2025, this Court granted Vesta's Motion for Summary Judgment on the Crossclaim, holding that PChange had a clear contractual duty to defend and indemnify Vesta.

See Rowe v. PChange Prot. Serv. LLC (Rowe III), 2025 WL 707556, at *5 (D.D.C. Mar. 5, 2025). Because PChange had refused to do so, and Plaintiff's claims against Vesta had been settled, the Court further concluded that PChange's duty to defend had merged with its concurrent obligation to indemnify Vesta for all reasonable defense costs. Id.

On May 23, Vesta moved for attorney fees and costs, seeking reimbursement of $246,635.35, which included the $15,000 settlement it had paid to Rowe. See Mot. for Att'y Fees at 2. The day before, counsel for PChange had emailed Vesta, stating PChange's position that Vesta's total harm from the lawsuit was limited to the settlement amount of $15,000 and that it believed that Vesta's actual out-of-pocket legal defense costs were only $25,000. See ECF No. 197-1, Exh. J (May 22, 2025, Email from R. Jones to S. Palys). PChange, however, never filed an opposition to Vesta's Motion for Attorney Fees.

As a result, on June 16, the Court granted the Motion as conceded under Local Civil Rule 7(b). See June 16, 2025, Minute Order. Eight days later, PChange moved for reconsideration, invoking Federal Rules of Civil Procedure 60(b)(1) and 60(b)(2). See ECF No. 204 (Mot. for Recon.) at 6–8.

**II.     Legal Standard**

Federal Rule of Civil Procedure 60(b) governs relief from final judgments or orders. More specifically, Rule 60(b)(1) permits a court to "relieve a party . . . from a final judgment, order, or proceeding for the following reasons: . . . mistake, inadvertence, surprise, or excusable neglect." Courts do not grant Rule 60(b)(1) motions "merely because a party is unhappy with the judgment"; instead, the party seeking relief must "make some showing of why he was justified in failing to avoid mistake or inadvertence." Munoz v. Bd. of Trs. of Univ. of D.C., 730 F. Supp. 2d 62, 66 (D.D.C. 2010) (citation omitted). Rule 60(b)(1) also extends, in limited

circumstances, to mistakes attributable to the court itself. See Kemp v. United States, 596 U.S. 528, 530 (2022) ("a 'mistake' under Rule 60(b)(1) includes a judge's errors of law"). Circumstances sufficient for relief include errors such as a court's "basing its legal reasoning on case law that it failed to realize had recently been overturned" or "in the very limited situation when the controlling law of the circuit changed between the time of the court's judgment and the Rule 60 motion." Avila v. Dailey, 404 F. Supp. 3d 15, 23 (D.D.C. 2019) (internal quotation marks and citations omitted).

Rule 60(b)(2), in turn, authorizes relief based on "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." For a movant to succeed, "(1) the newly discovered evidence [must be] of facts that existed at the time of trial or other dispositive proceeding, (2) the party seeking relief must have been justifiably ignorant of the evidence despite due diligence, (3) the evidence must be admissible and of such importance that it probably would have changed the outcome, and (4) the evidence must not be merely cumulative or impeaching." Lightfoot v. District of Columbia, 555 F. Supp. 2d 61, 68 (D.D.C. 2008) (quoting United States v. Int'l Bhd. of Teamsters, 247 F.3d 370, 392 (2d Cir. 2001)) (cleaned up).

**III.   Analysis**

PChange contends that the Court erred by granting the Motion for Attorney Fees without making findings to address its objections, see Mot. for Recon. at 6–7, and that "newly discovered evidence" — a provision in the addendum to the August 1, 2019, contract — capped its

4

contractual obligation at the $25,000 deductible Vesta paid. Id. at 7–8. The Court looks at these arguments in turn.

    A.    <u>Rule 60(b)(1)</u>

PChange asserts mistake only by the Court — and not its own mistake — as the basis for relief under Rule 60(b)(1). It argues that the Court erred in granting Vesta's fee motion without issuing factual findings or legal conclusions explaining whether, or in what manner, PChange's objections to the fees were considered. Id. at 6. That position rests on a misunderstanding of the Court's prior ruling.

As noted above, PChange never filed any opposition to Vesta's fee motion. Although counsel for PChange emailed Vesta the day before the motion was filed to articulate PChange's position and disagreement with Vesta's proposed legal fees, id. at 7; May 22, 2025, Email from R. Jones to S. Palys, such informal communications do not preserve arguments for judicial consideration. See LCvR 7(b) (requiring opposing party to "file a memorandum of points and authorities in opposition to the motion").

Without any opposition, the Court was entitled to "treat the motion as conceded" under Local Civil Rule 7(b). Far from being "some obscure technicality," Rule 7(b) is "regularly enforced in this district," Robinson v. Ergo Sols. LLC, 4 F. Supp. 3d 181, 187 (D.D.C. 2014), including with respect to motions for attorney fees. Id. (applying Rule 7(b) to unopposed motion for attorney fees); Rogers v. Amalgamated Transit Union Local 689, 2017 WL 476632, at *1 (D.D.C. Jan. 4, 2017) (same). The D.C. Circuit has also repeatedly affirmed enforcement of Rule 7(b) "as an appropriate exercise of district court authority and discretion." Robinson, 4 F. Supp. 3d at 187 (citing Fox v. Am. Airlines, Inc., 389 F.3d 1291 (D.C. Cir. 2004), and Twelve

5

John Does v. District of Columbia, 117 F.3d 571 (D.C. Cir. 1997)). The Court's June 16, 2025, Minute Order granting Vesta's unopposed motion was thus proper.

Notably, PChange never argues that its failure to oppose the fee motion resulted from "excusable neglect" under Rule 60(b)(1) and rightly so. Courts in this district have consistently held that an untimely filing — let alone a total failure to file — caused by counsel's inadvertence, oversight, or mistake does not constitute "excusable neglect" under the provision. See Jarvis v. Parker, 13 F. Supp. 3d 74, 79 (D.D.C. 2014) (citing cases).

To the extent that PChange contends that the Court should have set out its findings under Rules 52(a) and 54(d)(2)(c), that argument likewise provides no basis for relief under Rule 60(b)(1). The Court already ruled on PChange's liability for Vesta's fees when it granted summary judgment on Vesta's Crossclaim. See Rowe III, 2025 WL 707556, at *3 (finding that PChange "committed to indemnify and defend Vesta . . . against all . . . suits, including actual fees of attorneys" arising out of Rowe's suit) (internal quotation marks omitted). What remained was the ministerial determination of the reasonableness of the fees requested. Such routine determination is not the kind of "judicial error of law" that warrants relief under Rule 60(b)(1). Kemp, 596 U.S. at 539. In any event, having reviewed Vesta's submission, the Court finds that the requested fees are reasonable. Vesta's counsel are experienced litigators who billed at discounted rates, and the time they devoted to this matter was proportional to the complexity and duration of the case. See ECF No. 197–1 (Decl. of S. Palys), ¶¶ 2–8, 14. Rule 60(b)(1) thus does not provide grounds for reconsideration.

B.   Rule 60(b)(2)

PChange's Rule 60(b)(2) arguments fare no better. It points to the August 1, 2019, contract between PChange and the apartment building's owner, under which Vesta was listed as

an "additional insured," as "new evidence" that requires reversal of the fee motion. See Mot. for Recon. at 8; ECF No. 204-3, Exh.1 (General Serv. Contract) at ECF p. 3. More specifically, it now claims that Article 7 of the addendum to the contract caps its financial obligation to Vesta at $25,000. See Mot. for Recon. at 8; General Serv. Contract at ECF p. 13.

This position is untenable. First, the contract was already before the Court and known to PChange since it was included as an exhibit in both Vesta's Motion for Summary Judgment and PChange's Cross-Motion. See ECF Nos. 147-3, Exh.1 (General Serv. Contract); 156-4, Exh.1 (General Serv. Contract). Indeed, the entire purpose of that summary-judgment briefing was to determine if PChange had a duty to defend Vesta under that very contract. Rule 60(b)(2) requires evidence that "could not by the exercise of due diligence have been discovered in time to present it in the original proceeding." Lans v. Gateway 2000, Inc., 110 F. Supp. 2d 1, 3 (D.D.C. 2000) (citation omitted). PChange's failure to raise an argument based on a provision of a contract that was already in the record — and central to the very issue being litigated — does not meet that standard. Rule 60(b) is not a vehicle for a litigant to raise new legal theories or present "arguments and evidence that had been available to it throughout the proceeding." Bhd. of Ry. Airline v. St. Louis Sw. Ry. Co., 676 F. 2d 132, 139 (5th Cir. 1982); see also Good Luck Nursing Home, Inc. v. Harris, 636 F. 2d 572, 577 (D.C. Cir. 1980) ("Rule 60(b) cannot [] be employed simply to rescue a litigant from strategic choices that later turn out to be improvident."). Rule 60(b)(2) therefore does not afford PChange relief.

Even if the Court were to entertain PChange's new arguments on the merits, it would not alter the result because PChange misreads Article 7 of the addendum. That provision requires PChange to "provide and maintain in effect insurance coverage . . . protect[ing] against false arrest, physical injury to another party, and on the job injury." General Serv. Contract at ECF

7

p. 13. It further states that "[PChange] will be responsible and liable only for any deductible applicable" to such coverage, including "[g]eneral liability for bodily injury and personal injury." Id.

PChange asserts that because Vesta maintained its own insurance with a $25,000 deductible, Article 7 caps its liability to Vesta at that same amount. See Mot. for Recon. at 5–6. Article 7, however, says nothing about Vesta's deductible; it speaks only to PChange's responsibility for deductibles on the insurance coverage PChange itself was required to maintain. Nothing in the text suggests that Vesta's recovery against PChange is somehow limited by its own insurance arrangements. To read such a limitation into Article 7 would improperly transform PChange's obligation to cover its own deductible into a blanket cap on its contractual liability.

As the Court has already held, moreover, PChange is obligated under Paragraph 15 of the contract to indemnify Vesta for all reasonable defense costs. See Rowe III, 2025 WL 707556, at *3, *5 (citing Gen. Serv. Contract at ECF p. 4). Article 7, by contrast, serves an independent function: it governs insurance procurement and clarifies PChange's deductible obligations. In any case, the contract also specifies that "in the event of any discrepancy between the Addendum and [the contract], the language in the [contract] shall take precedence over that in the Addendum." General Serv. Contract at ECF p.6. Even if Article 7 could be read as narrowing PChange's obligations — which it cannot — the plain terms of the contract make clear that Paragraph 15 controls.

PChange last maintains that awarding fees to Vesta would result in a "double recovery." Mot. for Recon. at 9. In response, Vesta suggests that the collateral-source rule, which allows an injured person to receive full compensation from the tortfeasor regardless of compensation the

8

person has received from unrelated sources, forecloses this argument. See ECF No. 205 (Opp. to Mot. for Recon.) at 2; Mot. for Att'y Fees at 5–6 (citing cases applying rule to attorney fees). Under Maryland law, which governs the August 1, 2019, contract, see General Serv. Contract at ECF p. 15, the collateral-source rule "has generally been applied only to tort cases" and therefore would not apply to a contract case like this one. E. Shore Title Co. v. Ochse, 160 A.3d 1238, 1261 (Md. 2017); see also Westfield Ins. Co. v. Gilliam, 269 A.3d 1047, 1052 (Md. 2022) (explaining substantive and evidentiary aspects of collateral-source rule and application to tort cases). Even so, the Court is unpersuaded that any true risk of double recovery exists. Vesta represented at the September 22, 2025, hearing that it will reimburse its insurer once PChange indemnifies it for the fees and costs. See Tr. of September 22, 2025, Hearing at 13:24–25. That assurance eliminates any concern of a windfall recovery. The Court accordingly finds no substantive basis to reverse its previous Order granting Vesta's Motion for Attorney Fees.

**IV.     Conclusion**

For the foregoing reasons, the Court will deny PChange's Motion for Reconsideration. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date: October 2, 2025